The PEOPLE of the State of
Colorado, Complainant,

v.

James David Kimo SMITH,
Attorney–Respondent.

No. 88SA127.

Supreme Court of Colorado,
En Banc.

April 17, 1989.
Rehearing Denied May 15, 1989.

Linda Donnelly, Disciplinary Counsel,
George S. Meyer, Deputy Disciplinary
Counsel, Denver, for complainant.

James David Kimo Smith, pro se.

QUINN, Chief Justice.

A complaint was filed with the Grievance Committee charging the respondent, James David Kimo Smith, with unprofessional conduct arising out of his representation of James A. Burge in two drunk driving cases in 1984 and 1985 and with other acts of unprofessional conduct that occurred while the grievance complaint was pending before the Grievance Committee. A hearing board of the Grievance Committee found by clear and convincing evidence that the respondent had committed various acts of professional misconduct and recommended that he be suspended from the practice of law for sixty days. A hearing panel of the Grievance Committee approved the hearing board's findings and its disciplinary recommendation. We adopt the findings of the Grievance Committee, but reject the recommended discipline as unduly lenient. We enter an order suspending the respondent from the practice of law for one year and one day.

### I.

The respondent was admitted to the practice of law in Colorado in 1982 and is subject to the jurisdiction of this court and its Grievance Committee. At a hearing before a hearing board of the Grievance Committee on October 14 and 15, 1987, the following facts were established.

On December 13, 1984, the respondent entered into an agreement with James A. Burge to represent him in a drunk driving case and a license revocation hearing for $500 plus an hourly fee of $100 for trial preparation and trial. Since Burge had no funds available for a retainer, he signed a cognovit promissory note in the amount of $500 with interest accruing at twenty-four percent per annum. Burge's mother in January 1985 sent the respondent a check in the amount of $400 for legal fees in this case.

In February 1985 Burge was again charged with drunk driving. The respondent executed a second fee agreement with Burge, similar to the first except that the fee was $750 plus a $100 hourly fee for trial preparation and trial. Burge at this time executed a second promissory note for $1,457 plus interest at the rate of thirty-five percent per annum. As part of this second fee agreement, Burge gave the respondent a security interest in his Subaru pickup truck and delivered an ignition key to the respondent. Burge paid the respondent $200 in cash on March 8, 1985, and also gave him a third-party check for $150 which was never paid.

On May 10, 1985, Burge came to the respondent's apartment to prepare for a preliminary hearing. When it became obvious to the respondent that Burge did not intend to meet his financial obligations, the respondent excused himself on the pretext that he was going to pick up a package at the front desk of the apartment complex. The respondent took possession of Burge's Subaru pickup truck and drove the truck to an underground garage at his apartment complex, to which Burge had no access. The respondent then inventoried and took possession of various items of personal property in the truck, including a so-called "cocaine kit." [1]

Burge, who had been standing on the balcony of the respondent's apartment and had witnessed the seizure of his truck, protested the respondent's conduct and left the apartment in an extreme state of anxiety. The respondent withdrew from any further representation of Burge, and other counsel entered an appearance on Burge's behalf. Burge later regained possession of the truck and delivered it to the holder of the senior security interest.

On June 5, 1985, the respondent filed a civil action against Burge for attorney fees in the amount of $1,627 in Denver County Court. The respondent initially obtained a default judgment against Burge on January 14, 1986. The default judgment, however, was later vacated on January 27,

---

1. Other objects taken from Burge's truck and retained by the respondent included $19.22, a calculator, a pair of glasses, various personal papers, a savings bankbook, a pen, and other small items.

1986, on the motion of Burge's attorney.[2] The respondent, apparently unaware that the default judgment had been vacated, wrote a letter to Burge's mother on April 10, 1986, stating as follows:

I am writing to you with regard to your son James Allen Burge and the monies he owes me. As you may recall in my May 20, 1985 letter to you, Mr. Burge failed to keep the promises he made to me. I brought legal action against your son on June 5, 1985. A trial was held in Denver County Court on January 14, 1986. Your son James Burge failed to appear. In fact his attorney also failed to appear. As a result I was awarded a default judgment in the amount of $1,627.00 plus attorney's fees amounting to $300.00 plus interest at a rate of 35% per annum. The total amount that James presently owes me is $2,601.45. The Judgment is no longer appealable as 30 days has elapsed since the Judgment was awarded.

I request your assistance in recovering the debt that James owes me. I have James' Social Security Number and FBI number (from his felony theft conviction) so he will not be able to hide from me for long. Any time he applies for credit or is arrested for some crime I will find out where he lives and execute on the Judgment. As long as the interest on my judgment accumulates interest at the rate of 35% per annum James can never own anything of value without the fear of attachment and seizure. Also he will never know when I will appear and begin to garnish his wages, causing embarrassment because of his employer's knowledge.

As President Reagan has said, "You can run but you can't hide". I am giving James another chance to square things with me. If he doesn't come forward I will track him down and avail myself of every remedy that is available to me.

May I please hear from you?

The respondent later effected valid service on Burge and eventually obtained a judgment against him on the respondent's claim for unpaid attorney fees.

In the meantime, on August 2, 1985, while the respondent's civil action for attorney fees was still pending, Burge filed a request for investigation with the Grievance Committee. Approximately three weeks after the request was filed, the respondent called the office of Burge's attorney and left a message with the telephone receptionist. The substance of the message was that unless his claim for attorney fees was settled and the grievance filed against him was withdrawn, he would go to the police with Burge's so-called "cocaine kit" that he had taken from Burge's truck back in May of 1985. During the investigation of the grievance complaint, the Grievance Committee investigator contacted the respondent and questioned him about the message left with the telephone receptionist. The respondent denied that he threatened to present criminal charges against Burge.[3]

2. The hearing board made the following findings in regard to the respondent's civil action. Burge was served with a summons and complaint while attending a court hearing, but the respondent apparently noted on the summons that Burge had waived formal service. On June 12, 1985, Burge's attorney filed a motion to quash service, and on June 21, 1985, the court granted the motion and assessed $100 in attorney fees against the respondent. The respondent then served Burge again, but did not file the summons and complaint with the court. The respondent told Burge's attorney that Burge had been again served with a summons and complaint, but when Burge's attorney went to the court to file an answer he discovered that the alias summons and complaint had not been filed with the court. The respondent, nevertheless, set the case for trial on December 20, 1985, which date was later rescheduled to January 14, 1986. Because Burge's attorney was of the opinion that the court never obtained jurisdiction over Burge, neither Burge nor his attorney appeared for the trial date. The respondent obtained a default judgment, which was later vacated on the motion of Burge's attorney on the basis that the summons and complaint had never been filed with the court.

3. In his testimony before the hearing board, the respondent attempted to explain his message about turning over the "cocaine kit" to the police on the basis that he feared for his own inculpation by retaining possession of an instrumentality used in the commission of a crime. The board found such testimony unpersuasive, particularly since the respondent had retained possession of the so-called "cocaine kit" for sev-

Approximately three weeks prior to the grievance hearing scheduled on October 14, 1987, the respondent hand delivered to the disciplinary counsel's office a writ of garnishment for the purpose of attaching the travel expenses that had been allocated for Burge's presence at the grievance proceeding. Accompanying the writ of garnishment was a letter signed by the respondent stating:

> The "Garnishment" is valid for a period of 10 days. You will be served again in 10 days unless you confirm in writing that monies due Mr. Burge from your office will be paid in accordance with the Law, to me, pursuant to the attached Garnishment.

The respondent later informed the disciplinary counsel by letter that he had withdrawn the garnishment until further notice.

## II.

The hearing board determined that the legal fees charged by the respondent, including the interest rates on the promissory notes, did not constitute an illegal or clearly excessive fee in violation of DR 2-106[4] and that the respondent's conduct in suing Burge for attorney fees did not violate the Code of Professional Responsibility. The board went on to determine, however, that the respondent's misrepresentation to Burge regarding his purpose in leaving his apartment, when in fact he intended to take possession of Burge's truck and personal property, constituted conduct involving deceit or misrepresentation in violation of DR 1-102(A)(4) and that the respondent's retention of the various items of property belonging to Burge, which Burge was entitled to receive, violated DR 9-102(B)(4). The hearing board also determined that the respondent's conduct in writing a letter to Burge's mother was a calculated effort to harass and intimidate her into paying her son's attorney fees and violated DR 1-102(A)(6) (conduct adversely reflecting on respondent's fitness to practice law) and C.R.C.P. 241.6(3) (an act violating highest standards of honesty, justice, or morality).

With respect to the message which the respondent left with the telephone receptionist at the office of Burge's attorney— namely, that the respondent would go to the police with Burge's "cocaine kit" unless the respondent's claim for attorney fees was settled and the grievance complaint filed against him was withdrawn—the hearing board concluded that the respondent's conduct constituted a threat to bring criminal charges against Burge solely to obtain advantage in a civil matter and thus was a violation of DR 7-105(A).[5] The hearing board also concluded that the respondent's failure to fully disclose to the Grievance Committee investigator the details of the telephone message to the receptionist at the office of Burge's attorney constituted conduct involving deceit or misrepresentation in violation of DR 1-102(A)(4).

Finally, the board concluded that the respondent's conduct in serving upon the disciplinary counsel's office a writ of garnishment on the funds allocated as transportation fees for Burge's attendance at the grievance hearing constituted conduct prejudicial to the administration of justice in violation of DR 1-102(A)(5), conduct ad-

---

eral months prior to Burge's filing of a request for investigation with the Grievance Committee on August 2, 1985.

4. Section 5-12-103, 2 C.R.S. (1988 Supp.), states that the parties to a promissory note may stipulate therein for the payment of a higher rate of interest than eight percent per annum, but not exceeding forty-five percent per annum. The disciplinary counsel filed an exception to the hearing board's conclusion that the respondent did not violate DR 2-106 by charging "non-refundable" excessive fees of $500 and $750 for the drunk driving cases. The hearing board took a different view of the matter and determined that under the totality of circumstances, including the gravity of the offenses with which Burge was charged, the respondent did not violate DR 2-106. In light of the fact-specific nature of the hearing board's findings and conclusion on this issue, we reject the disciplinary counsel's claim that the hearing board erred in its resolution of this matter.

5. The hearing board inadvertently cited to DR 7-104(A) in determining that the respondent's conduct constituted a threat to present criminal charges solely to obtain an advantage in a civil matter. The correct citation for this disciplinary rule is DR 7-105(A).

versely reflecting on the respondent's fitness to practice law in violation of DR 1–102(A)(6), and conduct obstructive of the Grievance Committee in the performance of its duties in violation of C.R.C.P. 241.6(7).

After determining that the respondent had violated the Code of Professional Responsibility and C.R.C.P. 241.6, the hearing board then addressed the appropriate disciplinary sanction. The board viewed as aggravating factors warranting suspension the respondent's threat to disclose potentially incriminating information against Burge in order to gain a monetary advantage for himself. *See ABA Standards for Imposing Lawyer Sanctions* § 7.2 (suspension generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with intent to obtain benefit for himself, and causes injury or potential injury to a client, the public, or the legal system). The board viewed as mitigating circumstances the respondent's lack of any prior disciplinary record, the impulsive rather than malevolent or dishonest nature of his conduct, and his inexperience in the practice of law. *See ABA Standards for Imposing Lawyer Sanctions* § 9.32(a), (b) & (f) (mitigating factors include absence of prior disciplinary record, absence of dishonest or selfish motive, and inexperience in the practice of law). It was the board's recommendation that the respondent be suspended from the practice of law for a period of sixty days and that he be assessed the costs of the grievance proceedings. A hearing panel of the Grievance Committee approved the findings and recommendation of the hearing board.

### III.

The factual findings of the Grievance Committee are binding on this court unless they are clearly erroneous or unsupported by substantial evidence when the record is considered as a whole. *People v. Gibbons,* 685 P.2d 168, 172–73 (Colo.1984). The respondent has not challenged the factual findings of the hearing board, and with good reason, since those findings are substantially supported by the record. Given

those factual findings, there can be no question that the hearing board properly determined that the respondent's behavior in this case constituted professional misconduct warranting discipline.

The respondent has filed various exceptions to the Grievance Committee's report on grounds unrelated to the sufficiency of the evidence. Our review of the record satisfies us that the respondent's claims are unsupported in fact and in law and merit only brief comment here.

### A.

■ The respondent argues that he was denied a public hearing on the grievance complaint. This claim is refuted by the confidentiality attaching to grievance proceedings by virtue of C.R.C.P. 241.24(a).

### B.

■ The respondent also alleges a denial of his right to a speedy hearing. Disciplinary proceedings, however, are not subject to the speedy trial requirements of a criminal prosecution. *See People v. Morley,* 725 P.2d 510, 514 (Colo.1986). Moreover, in this case several of the respondent's acts of professional misconduct occurred subsequent to Burge's initial request for investigation on August 2, 1985. One of these acts occurred three weeks later when the respondent left the threatening message about the so-called "cocaine kit" at the office of Burge's attorney. A second act occurred when the respondent misrepresented to the Grievance Committee investigator that he did not threaten to present criminal charges against Burge. Another act took place on April 10, 1986, when the respondent wrote the harassing and intimidating letter to Burge's mother. The fourth act occurred in September 1987, three weeks prior to the grievance hearing, when the respondent served the writ of garnishment on the office of the disciplinary counsel. Given the continuing course of unprofessional acts, each of which required additional investigation by the Grievance Committee investigator and one of which occurred shortly before the grievance hearing, we are satisfied that there

was no such delay in this case as to rise to the level of a due process violation or, for that matter, to result in any prejudice to the respondent.

### C.

■ The respondent also argues that the hearing board was not impartial and was actually biased against him. As evidence of the alleged bias the respondent points to the hearing board's decision to reduce the time for taking testimony on the second day of the hearing, the board's refusal to permit him to introduce into evidence the entire transcript of his civil proceeding against Burge for attorney fees, and the board's refusal to accord conclusive effect to the respondent's civil judgment against Burge for attorney fees on the issue of any alleged professional misconduct relating to the respondent's civil judgment against Burge for attorney fees. We reject the respondent's argument.

The hearing board's reduction of the time for taking testimony did not adversely affect the respondent's presentation of evidence. On the contrary, the respondent voluntarily chose not to call several witnesses whom he had subpoenaed for the hearing. Furthermore, the hearing board permitted the respondent to make use of the transcript of the civil trial for impeachment purposes and, by stipulation of the disciplinary counsel, as the equivalent of deposition testimony in the case of two witnesses.

■ With respect to the transcript and judgment in the civil trial, we are satisfied that the hearing board properly ruled that the civil action against Burge had no conclusive effect on the allegations of professional misconduct arising out of the respondent's claim against Burge for attorney fees. The respondent's argument in this respect misconceives the purpose of the disciplinary process by incorrectly assuming that the respondent's civil judgment against Burge somehow insulated from scrutiny the respondent's professional misconduct arising out of his efforts to collect attorney fees due and owing him. In sum, the respondent's assertion of bias is utterly devoid of merit.[6]

### D.

■ The respondent next contends that his attorney representing him at the grievance hearing was unprepared, ineffective, and labored under a conflict of interest. The record again, however, shows that the respondent's counsel was prepared for the hearing, provided the respondent with effective representation, and, so far as the record shows, labored under no conflict of interest whatever.

### E.

■ The respondent also accuses the disciplinary counsel of prosecutorial misconduct, but, as in the case of his other assertions, this claim is unsupported in fact and law.[7]

### F.

■ The respondent asserts that the hearing panel erred in permitting the disciplinary counsel to amend the grievance complaint to include an additional count relating to the respondent's delivery of a writ of garnishment to the disciplinary

6. The respondent alleges that the hearing board was biased in allowing the disciplinary counsel, at the end of the People's case, to amend the grievance complaint to conform to the evidence by adding a charge of unauthorized revelation of a client's confidence in violation of DR 4–101(B). The hearing board, however, ultimately determined that this charge had not been sustained. In light of this action, the respondent's allegation must be rejected out of hand.

7. The respondent also alleges that his right to freedom of speech was somehow violated by reason of the hearing board's determination that his harassing and intimidating letter to Burge's mother and his threat to turn the "cocaine kit" over to the police violated the Code of Professional Responsibility. Finally, the respondent alleges that the failure of the Grievance Committee to give conclusive effect to the county court judgment against Burge violated his civil rights and the antitrust laws. These claims are made without any factual or legal support, and we accordingly reject them as unfounded.

counsel's office. This claim is devoid of merit for the reason that this additional count alleged that the respondent engaged in conduct that amounted to an attempt to obstruct the grievance process and thus was properly a matter for consideration by the hearing board.

The only issue remaining for our consideration is whether the recommended discipline of a sixty-day suspension is appropriate under the circumstances disclosed by the record, and it is to that issue that we direct our attention.

## IV.

The disciplinary recommendation of the Grievance Committee is advisory only and is not binding on this court. *See, e.g., Morley*, 725 P.2d 510 (1986); *Gibbons*, 685 P.2d 168. In light of the serious and continuous nature of the respondent's professional misconduct, we conclude that the Grievance Committee's recommendation of a sixty-day suspension must be rejected as unduly lenient.

The respondent's unprofessional conduct ranged over a broad area, extended over a considerable period of time, and in some instances can only be described as unconscionable. Such conduct included: the use of deceit and misrepresentation during the lawyer-client relationship in violation of DR 1–102(A)(4); threatening to bring criminal charges against a former client in an attempt to force him into paying a legal fee in violation of DR 7–105(A); writing an intimidating letter to his former client's mother in an effort to collect attorney fees, and thereby engaging in conduct adversely reflecting on the respondent's fitness to practice law in violation of DR 1–102(A)(6) and violating the highest standards of honesty, justice, or morality in violation of C.R.C.P. 241.6(3); failing to promptly deliver to his client property coming into the lawyer's possession but belonging to the client in violation of DR 9–102(B)(4); and obstructing the grievance process by misrepresentation in violation of DR 1–102(A)(4) and C.R.C.P. 241.6(7) and by conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5).

The extensive and egregious pattern of the respondent's misconduct reflects a fundamental insensitivity to and ignorance of the basic responsibilities owed by a lawyer to his client, to the legal profession, to members of the public, and to the legal system itself. The recommended discipline of a sixty-day term of suspension cannot be squared with the serious nature of the respondent's professional misdeeds. In our view, any suspension less than one year and one day would constitute a disservice to the legal profession and to the public.

The respondent is accordingly suspended from the practice of law for a period of one year and one day, effective thirty days after the date of this opinion. The respondent is ordered to comply with the provisions of C.R.C.P. 241.21 relating to the termination of all legal matters, the giving of notice to all clients and opposing counsel, and the maintenance of appropriate records as proof of compliance.

Any application for reinstatement must be supported by clear and convincing evidence that the respondent is fit to practice law and has complied with the requirements of C.R.C.P. 241.22. The respondent is further ordered to pay the costs of these grievance proceedings in the amount of $2,836.67 by tendering such sum to the Grievance Committee, 600 Seventeenth Street, 500–S Dominion Plaza, Denver, Colorado, 80202, within ninety days of this date.