### The PEOPLE of the State of Colorado, Complainant,

v.

### William Ellery PETERS, Attorney–Respondent.

### No. 93SA42.

Supreme Court of Colorado, En Banc.

March 29, 1993.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Larry S. Pozner, Denver, for respondent.

## PER CURIAM.

This attorney discipline proceeding comes to us on a stipulation, agreement, and conditional admission of misconduct entered into between the respondent and the assistant disciplinary counsel. In the stipulation, the parties recommended that the respondent be suspended from the practice of law for forty-five days because of professional misconduct involving the improper collection of attorney's fees. An inquiry panel of the Supreme Court Grievance Committee approved the stipulation. We accept the stipulation.

### I

The respondent was admitted to the bar of this court on October 19, 1981, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). The parties stipulated to the following facts concerning six separate instances of misconduct.

### A

On February 27, 1988, Charles Waddell (Waddell) and Alana Lockney (Lockney) met with the respondent and signed the respondent's fee agreement. The respondent agreed to represent Waddell, who had been charged with driving under the influence, driving while license revoked, driving while license denied, and driving without a license. The respondent charged Waddell a total of $3,940, but by the date set for sentencing, Waddell was behind on his payments to the respondent's law firm and owed approximately $1,400. At sentencing, Waddell and Lockney brought $250 in cash and a $250 check to court to pay Waddell's fine. The respondent asked Waddell to pay him the $250 in cash and asked Lockney for six post-dated checks to cover the balance of fees due. Lockney gave the respondent the checks as request-

ed, but the respondent did not cash any of the checks and took no further action to collect the balance of fees owed.

As the respondent has admitted, his conduct at the sentencing hearing violated DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law).

### B

On December 2, 1988, Kelly A. Uhl (Uhl) retained the respondent to represent him on a driving under the influence charge. The initial fee arrangement pertained only to plea negotiations, but after Uhl rejected an offer to plead to a lesser charge, on respondent's advice, the fee agreement was modified. Uhl paid the respondent a total of $1,960 in fees and costs in contemplation of proceeding to trial. Respondent filed a motion to dismiss, or in the alternative to suppress certain evidence. The motion was set for hearing on May 4; however, when Uhl, who was informed on March 2 of the hearing, failed to appear the motion was denied. Uhl ultimately pleaded guilty to the charge of driving while ability impaired and sentencing was set for September 11, 1989. On August 11, 1989, the respondent wrote to Uhl, telling him to bring an additional $495 in fees to the sentencing hearing: $300 for the hearing itself, $160 for sixteen letters, and $35 for an outstanding balance. Uhl wrote back on August 16, stating that he no longer wanted the respondent to represent him. Uhl enclosed $35 for the outstanding balance, and promised to send $160 soon thereafter.

On August 23, 1989, the respondent telephoned Uhl and told him that the respondent must appear at the sentencing hearing because of a fifteen-day notice of withdrawal requirement. The respondent stated that he would appear at the September 11, 1989 sentencing hearing for no fee, and Uhl agreed to this. The respondent did not move to withdraw from Uhl's case. On September 11, 1989, the respondent met with Uhl and his fiancée, Tammy Barker (Barker), outside the courtroom. The respondent again asked for money to bring Uhl's account up to date, and Uhl eventual-

ly gave the respondent a $300 check as well as a $160 check that Uhl had intended to use to pay his fine. Uhl was sentenced and he agreed to pay the respondent for his appearance. However, Barker stopped payment on the $300 check the next day. Respondent took no action to collect the unpaid balance.

The respondent has stipulated that his conduct in attempting to collect a fee at Uhl's sentencing violated DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1–102(A)(6) (engaging in conduct that adversely reflects on his fitness to practice law). Moreover, when he failed to withdraw following Uhl's request that he do so, the respondent violated DR 2–110(B)(4) (a lawyer shall withdraw from employment if discharged by his client).

### C

Cheryl Cruickshank (Cruickshank) retained the respondent on October 27, 1987, to defend her on a felony theft charge, and she initially paid him $1,500. During a subsequent meeting on March 11, 1988, the respondent demanded that Cruickshank pay an additional $1,500 prior to the preliminary hearing. When Cruickshank told the respondent that she could not pay him, he threatened to withdraw. He called her that evening, however, and apologized for his behavior.

Cruickshank was found guilty following trial. The respondent collected $2,120 from Cruickshank out of a total amount owed of $5,536. As the respondent has admitted, his conduct violated DR 1–102(A)(6) (engaging in conduct adversely reflecting on his fitness to practice law). The assistant disciplinary counsel has stipulated that the respondent's conduct in collecting his fee resulted in no harm to Cruickshank other than additional stress.

### D

On May 26, 1988, William Riddle (Riddle) hired the respondent to represent him on a charge of driving under the influence. The respondent subsequently represented Rid-

dle on four other serious driving offenses, and, between May 1988 and October 1989, Riddle paid the respondent more than $9,000 in attorney's fees.

On March 13, 1990, the evening prior to trial of one of the offenses, the respondent told Riddle that he was behind in his fee payments, and that if he did not pay immediately he would face the prospect of either no representation at trial or representation by a less experienced associate attorney. Neither of these circumstances occurred, however.

On the following morning, and before the trial, Riddle and one of the respondent's associates met at the Department of Motor Vehicles and attempted, unsuccessfully, to transfer the titles of five vehicles to the respondent. Riddle then signed a promissory note in the amount of $3,750 and pledged four automobiles as security. The respondent did not collect the $3,750 and did not bring suit for collection of the fees owed. The respondent's conduct, as he stipulated, violated DR 1–102(A)(6) (engaging in conduct adversely reflecting on his fitness to practice law).

### E

Michael Wells (Wells) retained the respondent on November 14, 1989, to represent him in a traffic matter. The respondent's fee agreement with Wells included a minimum charge of $250 for each court appearance. The respondent subsequently billed Wells for three court appearances for a total of $975, an amount which included additional fees. Wells believed that the respondent had appeared in person at the court appearances, but, in fact, the court appearances consisted of telephone calls made to the court by the respondent or by a non-lawyer member of the respondent's staff. The respondent and assistant disciplinary counsel have stipulated that the $750 was inadvertently collected from Wells for the court appearances. Respondent has reimbursed Wells for the $750 that was inadvertently collected. The respondent admitted that his conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, de-

ceit, or misrepresentation); and DR 2–106(A) (charging or collecting an illegal or clearly excessive fee).

### F

In early January 1990, Philip Gomez (Gomez) retained the respondent to represent him in a traffic matter and, based on the fee agreement, the respondent charged Gomez $600 for the arraignment and pre-trial settings. Although Gomez believed that the respondent had appeared in person at the court appearances, the appearances actually consisted of telephone calls made to the court by the respondent or by a non-lawyer member of the respondent's staff. The parties have stipulated that the $600 was inadvertently collected. Respondent has returned the $600 to Gomez. As above, the respondent has agreed that his conduct violated DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 2–106(A) (charging or collecting an illegal or clearly excessive fee).

### II

The inquiry panel approved the stipulation and has recommended that the respondent be suspended for forty-five days. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (ABA *Standards*), in the absence of aggravating or mitigating circumstances, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." ABA *Standards* 7.2. Thus, as the commentary to standard 7.2 states, "[s]uspension is appropriate ... when the lawyer did not mislead a client but engages in a pattern of charging excessive or improper fees." We find standard 7.2 equally applicable where, as in the first four counts above, the methods used in collecting fees are improper and unprofessional even though the fees may not be excessive per se. *See People v. Smith*, 773 P.2d 522, 525, 528 (Colo.1989) (attorney suspended for one year and one day for conduct involving, among other things, improper collection methods).

The respondent has prior discipline. He received a letter of admonition in February 1989 for neglect of a legal matter involving, among other things, the failure to promptly return unearned attorney's fees upon the client's request. The assistant disciplinary counsel has represented that the fees charged in the first four counts above were reasonable, but that less "stringent" methods of collection should have been used. In the latter two counts, the respondent returned the excessive fees and there is no evidence that the improper billing extended beyond those two instances. After reviewing the record, we conclude that at least a short period of suspension is appropriate. Accordingly, we accept the stipulation, agreement, and conditional admission of misconduct.

### III

It is hereby ordered that William Ellery Peters be suspended from the practice of law for forty-five days, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that Peters shall take the actions required after an order of suspension under C.R.C.P. 241.21, and that Peters shall pay the costs of this proceeding in the amount of $90.17 within 30 days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80203.