488 S.E.2d 871

**In the Matter of Ernest E. YARBOROUGH, Respondent.**

**No. 24662.**

Supreme Court of South Carolina.

Heard June 18, 1997.

Decided Aug. 4, 1997.

---

Ernest E. Yarborough, Winnsboro, pro se.

Charles M. Condon, Attorney General, and James G. Bogle, Jr., Senior Assistant Attorney General, Columbia, for complainants.

PER CURIAM:

In this attorney disciplinary matter, Respondent Ernest E. Yarborough is charged with presenting or threatening to present criminal charges in order to gain an advantage in a civil matter. Rule 4.5, Rule 407, SCACR. We find Respondent's actions constitute misconduct warranting a six-month suspension.

## FACTS/PROCEDURAL POSTURE

Kathy Able hired Respondent on June 30, 1992, to represent her in an automobile wreck case. During the course of this representation, Able rented a car from U–Save Auto Rental ("U–Save"). Payment for the rental car was to be made by Respondent upon settlement of Able's property damage claim. Respondent subsequently settled Able's property damage claim for $1550 on or about July 17, 1992. The settlement statement Respondent prepared indicated U–Save was owed $237.60. Respondent paid this amount to U–Save on July 30, 1992. The same day he swore out an arrest warrant on Able charging her with breach of trust with fraudulent intent. A grand jury true-billed an indictment against Able for this offense December 28, 1992.[1] However, the indictment was eventually *nolle prossed* by the solicitor for lack of merit on March 4, 1993.

There is conflict in the record regarding what actually happened to the $237.60. It is uncontested Respondent cashed the $1550 settlement check in Able's presence on July 17, 1992. Able testified Respondent then kept the $237.60 and was going to pay U–Save. She did not hear from him again until a day or two before she was arrested, when he called her and began screaming at her that "I'm going to have you locked up, you're going to pay me, and that's it."

Conversely, Respondent testified he gave the $237.60 to Able on July 17, 1992, who was to pay U–Save. U–Save was not paid, however, and contacted Respondent July 30, 1992

---

[1]. The warrant was dismissed by a magistrate on October 28, 1992, because Respondent did not appear at the preliminary hearing. At the panel hearing, Respondent testified he did not receive notice of this hearing. Nonetheless, the solicitor subsequently presented the warrant to the grand jury.

seeking payment. It was on this day Respondent paid U–Save and swore out the warrant. He did not consult Able before paying U–Save or swearing out the warrant because "there was nothing she could have told me that would have made any difference." [2] He sent Able a letter dated October 7, 1992, notifying her the case was closed and she owed him $244.21. This sum included the amount paid to U–Save as well as other outstanding expenses. Respondent also asked Able to pick up her file. Able did not respond to this letter by either making payment or picking up her file.

On December 28, 1992, the same day the grand jury true-billed the indictment against Able, Respondent wrote the following letter to Able that is at the heart of the present grievance action:

Dear Ms. Able:

As you probably are aware, the Grand Jury returned a True Bill Indictment against you as a result of the warrant that I swore against you. This means that the criminal case will proceed against you.

Please be advised that I am willing to ask the Solicitor to drop all charges against you if you would make restitution in the amount of Two Hundred Forty Four Dollars and 21/100ths ($244.21). I must receive complete restitution no later than Thursday, December 31, 1992. If restitution is not received by the date stated, I will pursue the case against you.

Respondent testified when he swore out the warrant he was angry and upset Able had lied to him and he wanted her to know she could not get away with it. However, when he wrote the letter in December he was feeling guilty at having her arrested.

The complaint was filed March 4, 1996. A three-member hearing panel heard testimony regarding this matter May 16, 1996. The panel recommended dismissal of the charge, finding no clear violation of the Rules of Professional Conduct.

---

**2.** Apparently there is some lag time between swearing out a warrant and it being served.

The Interim Review Committee [3] of the Board of Commissioners on Grievances and Discipline ("IRC") disagreed with the panel's findings of fact and conclusions of law, finding Respondent's actions constituted misconduct.

## DISCUSSION

The Supreme Court has the ultimate authority to discipline attorneys, and the findings of the panel and IRC are not binding. However, such findings are entitled to great weight, particularly when the inferences to be drawn from the testimony in the record depend largely on the credibility of witnesses. *In the Matter of Bowen,* 321 S.C. 450, 469 S.E.2d 46 (1996) (per curiam). Misconduct must be proven by clear and convincing evidence. *In re Friday,* 263 S.C. 156, 208 S.E.2d 535 (1974) (per curiam).

Both the panel and the IRC believed Respondent's contention he had given Able the money to pay U–Save. They differed on whether Respondent's subsequent actions constituted misconduct. Although it chastised Respondent to "refrain from using the criminal courts to settle an otherwise civil dispute," the panel found the evidence was not clear and convincing Respondent violated Rule 4.5. The IRC, however, found misconduct because "[Respondent's conduct] clearly shows Respondent intended for the client to be intimidated by the criminal charges to repay the funds to him in a civil matter."

Rule 4.5, Rule 407, SCACR, states: "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." This court has not yet addressed the application of this rule to attorney conduct. South Carolina's former Code

---

**3.** The order adopting the new Rules for Lawyer Disciplinary Enforcement provided that any disciplinary case in which a hearing had been held by a hearing panel prior to January 1, 1997, would continue to conclusion under the former Rule on Disciplinary Procedure. The Interim Review Committee was created to fulfill the functions performed by the Executive Committee under Paragraph 14(a) of the former Rule on Disciplinary Procedure in those cases. Citations in this opinion to Rule 413, SCACR, will be to the former Rule on Disciplinary Procedure.

of Professional Responsibility, from which Rule 4.5 was taken [4] , contains the following comment:

> The civil adjudicative process is primarily designed for the settlement of disputes between parties, while the criminal process is designed for the protection of society as a whole. Threatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of that process; further, the person against whom the criminal process is so misused may be deterred from asserting his legal rights and thus the usefulness of the civil process in settling private disputes is impaired. As in all cases of abuse of judicial process, the improper use of criminal process tends to diminish public confidence in our legal system.

EC 7–21, Rule 32, S.C. Sup.Ct. Rules (repealed 1990).[5]

While Rule 4.5 may seem more applicable to an attorney's threatening criminal prosecution on behalf of a client [6], it has

---

**4.** *See* DR 7–105, Rule 32, S.C. Sup.Ct. Rules (repealed 1990).

**5.** Before the ABA deleted this rule from its Model Rules in August 1983, it strictly interpreted it as a total prohibition regardless of the factual circumstances behind the lawyer's action. *See* Threatening Criminal Prosecution, Lawyer's Manual on Professional Conduct (ABA/BNA) § 71:602 (Nov. 16, 1994). This rule was contained in the ABA Model Code of Professional Responsibility but was intentionally abandoned in August 1983 when the ABA adopted the Model Rules of Professional Responsibility. The drafters of the new rule felt there might be some instances where bringing up criminal charges in a civil matter would be appropriate. *Id.* at §§ 71:601 to –604. *See also Committee on Legal Ethics v. Printz*, 187 W.Va. 182, 416 S.E.2d 720, 722 (1992) (proclaiming the rule "overbroad because [it] prohibit[s] legitimate pressure tactics and negotiation strategies"). The fact that South Carolina chose to include Rule 4.5 when it replaced its own state Code of Professional Responsibility in 1990 would indicate it favors the more stringent approach.

**6.** *See, e.g., Burrell v. Disciplinary Board*, 777 P.2d 1140 (Alaska 1989) (per curiam); *In the Matter of Walter*, 466 N.E.2d 35 (Ind.1984); *State v. Gobel*, 201 Neb. 586, 271 N.W.2d 41 (1978); *In the Matter of Glavin*, 107 A.D.2d 1006, 484 N.Y.S.2d 933 (N.Y.App.Div.1985); *Office of Disciplinary Counsel v. King*, 67 Ohio St.3d 236, 617 N.E.2d 676 (1993) (per curiam); *In re Carpenter*, 250 Or. 394, 443 P.2d 238 (1968) (per curiam) (lawyer threatened persons with criminal prosecution unless they made good certain bad checks they had written). *But see Decato's Case*, 117 N.H. 885, 379 A.2d 825, 827 (1977) (no misconduct in writing letter informing recipient of possibility of criminal sanctions when

been equally applied to attorneys' disputes with their own clients. *See, e.g., Marquette v. State Bar,* 44 Cal.3d 253, 242 Cal.Rptr. 886, 746 P.2d 1289 (1988) (en banc) (lawyer threatened client's fiancee with criminal prosecution if she persisted in pursuing action to recover monies allegedly owed by lawyer); *People v. Farrant,* 852 P.2d 452 (Colo.1993) (lawyer threatened criminal prosecution against client to induce immediate payment of attorneys' fees); *People v. Smith,* 773 P.2d 522 (Colo.1989) (en banc) (lawyer threatened to bring criminal charges against former client unless he paid overdue legal fee and dropped grievance action); *In the Matter of Strutz,* 652 N.E.2d 41 (Ind.1995) (lawyer accusing client of criminal blackmail implicitly threatened to present criminal charges in order to negotiate settlement of a civil lawsuit filed by lawyer against client); *In re Porter,* 393 S.W.2d 881 (Ky.1965) (lawyer induced secretary to swear out criminal warrant against former client in order to deter client from pursuing monetary claim against him). Under this authority, even if Respondent did give Able the $237.60 to pay U–Save and Able neglected to do so, and we see no reason to contest what essentially was a credibility determination of the hearing panel, his subsequent actions can nonetheless violate Rule 4.5. "Although cases involving bad checks or collections *legitimately implicate both the criminal and civil law,* some lawyers in such matters overstep by using strong threats and intimidation to resolve the case." Threatening Criminal Prosecution, Lawyer's Manual on Professional Conduct (ABA/BNA) § 71:602 (Nov. 16, 1994) (emphasis added).

■ We find the letter Respondent wrote on December 28, 1992, clearly violated Rule 4.5 While it may be true that in July when he swore out the warrant, Respondent was truly angry and wanted Able criminally prosecuted, he testified he did not feel this way when he wrote this December letter making continuance of the criminal case contingent on Able's payment. This letter makes Respondent's claim he was not interested in ever getting paid but simply wanted justice served not credible. *See Committee on Professional Ethics and Conduct v. Michelson,* 345 N.W.2d 112, 116–17 (Iowa

---

attorney never requested payment from recipient; "The mere mention of possibly filing criminal charges does not in itself suggest that the statement was made in an effort to gain leverage in a collection suit").

1984) (en banc) (argument that lawyer and client were interested in criminal prosecution and thus actions were not "solely" to gain advantage in civil matter meritless because "plain language of the letters threatened criminal action unless the debtor immediately paid his civil obligation").

Furthermore, in the letter, the amount Respondent requested as "restitution" for the criminal charge was *not* the amount he paid U–Save (and the amount listed on the arrest warrant and indictment). Rather, it was the total amount allegedly owed him from his representation of Able. While the monetary difference may not be substantial, it clearly shows Respondent was attempting to use the criminal process to coerce Able to pay him not only the money he paid U–Save but also other fees and expenses owed him. Such conduct violated Rule 4.5. Respondent has thus committed misconduct in violating the Rules of Professional Conduct. ¶ 5(B), Rule 413, SCACR. Additionally, Respondent's conduct tends to pollute the administration of justice and bring the legal profession into disrepute. ¶ 5(D), Rule 413, SCACR.

We find that for this misconduct, Respondent is hereby suspended from the practice of law for six months, effective as of the date of this opinion.[7] Respondent shall file an affidavit with the Clerk of Court, within fifteen (15) days of service of this opinion, showing that he has complied with Paragraph 30 of Rule 413, SCACR.

DEFINITE SUSPENSION.

---

**7.** This sanction is consistent with other cases involving similar misconduct. *See, e.g., Burrell,* 777 P.2d at 1140 (one-month suspension); *Strutz,* 652 N.E.2d at 41 (two-year suspension—other misconduct also involved); *Farrant,* 852 P.2d at 452 (sixty-day suspension); *Smith,* 773 P.2d at 522 (one year suspension); *Porter,* 393 S.W.2d at 881 (disbarment).