559 S.E.2d 836

**In the Matter of Ernest E. YARBOROUGH, Respondent.**

**No. 25407.**

Supreme Court of South Carolina.

Heard Nov. 28, 2001.
Decided Feb. 11, 2002.

Attorney General Charles M. Condon and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for the Office of Disciplinary Counsel.

Ernest E. Yarborough, pro se.

PER CURIAM:

In this attorney disciplinary matter, the sub-panel and the full panel recommended respondent Ernest E. Yarborough be definitely suspended for 18 months. We impose an indefinite suspension.

## FACTS

The Commission on Lawyer Conduct filed formal charges against respondent regarding four matters. Respondent answered the formal charges and appeared *pro se* at the hearing. Respondent cross-examined the State's witnesses but did not present any evidence of his own and did not testify in his own defense. The sub-panel issued its report which made findings of misconduct and recommended a definite suspension of 18 months. The full panel adopted the sub-panel's report.

*Disciplinary History*

Upon being convicted of obstruction of justice,[1] respondent was placed on interim suspension on April 3, 1997. *In re Yarborough,* 326 S.C. 62, 483 S.E.2d 473 (1997). That conviction is not yet final.[2]

Respondent was suspended from practice for six months on August 4, 1997. *In re Yarborough,* 327 S.C. 161, 488 S.E.2d 871 (1997). In this matter, the Court found misconduct based on respondent utilizing criminal charges to gain advantage in a civil matter. *See* Rule 4.5, RPC, of Rule 407, SCACR.

On June 7, 1999, respondent was publicly reprimanded for his improper conduct—making an unwanted sexual advance and inappropriate sexual comments—towards his female client. *In re Yarborough,* 337 S.C. 245, 524 S.E.2d 100 (1999).

*Child Support Matter*

James B. Loggins is an attorney who represents his client (Mother) in a family court matter against respondent. Respondent and Mother have a child together, and respondent is under a family court order to make child support payments to Mother. Shortly after respondent's interim suspension in April 1997, respondent began falling behind in his child support payments. Initially, he was not held in contempt for his

---

1. In brief, the facts of the obstruction of justice are as follows. Respondent represented John Glenn who was suspected of stalking his former girlfriend (Girlfriend). Upon finding Glenn armed with a gun in Girlfriend's bedroom closet, the police arrested him and charged him with burglary. Respondent contacted Girlfriend and asked her to drop the charges. He told her Glenn would pay her $500 to drop the warrant; Girlfriend refused. At trial, respondent's private investigator, Tony Kennedy, testified that respondent asked Kennedy to see if he could get Girlfriend to drop the charges and to remind her of the $500 offer. Girlfriend eventually acquiesced, and Kennedy got an affidavit from her stating she did not want to continue the case and that she had given Glenn permission to enter her house. At trial, Girlfriend testified the affidavit was false and she never received any money. Respondent testified that his offer to Girlfriend was in the form of restitution for property damage. Respondent denied directing Kennedy to talk to Girlfriend about the money.

2. The Court of Appeals affirmed the conviction on the merits, but remanded the matter to the trial court on respondent's issue regarding jury misconduct. *State v. Yarborough,* Op. No. 2000–UP–059 (S.C. Ct.App. filed Feb. 8, 2000). Respondent petitioned for certiorari, but this Court denied the petition.

failure to pay. In October 1998, however, the family court found respondent had willfully and intentionally failed to pay at least some of his child support obligation and held respondent in contempt of court.

Following the October 1998 family court order, respondent continued to fall behind in his child support payments. In June 1999, the parties reached an agreement wherein Mother would dismiss the Rule to Show Cause provided that respondent pay $400 to the family court in Richland County by June 15, 1999, and an additional $1,000 by June 28, 1999. Respondent delivered to Loggins a $400 personal check[3] made out to the family court, and Loggins forwarded the check. However, the check was returned to respondent's wife because the Richland County Family Court does not accept personal checks. Loggins testified that the $400 check was never replaced or repaid. Moreover, the $1,000 payment agreed to in the consent order was never paid.

Linda Taylor, the family court records custodian, testified that as of January 2001, respondent had an arrearage of $29,237.76. Taylor stated that the last payment made to the family court was in October 1998. Although respondent implied through cross-examination that he had made payments directly to Mother, respondent did not present her as a witness.

*Tony Kennedy Matter*

As noted above, respondent was convicted of obstruction of justice in 1997. One of the witnesses who testified against respondent was Lemeul "Tony" Kennedy, who worked as a private investigator for respondent. On May 20, 1998, while *State v. Yarborough* was on appeal, respondent wrote Kennedy a letter. The letter begins as follows: "The time has come for you to face me in a civil trial for the false allegations that you made against me." Respondent states in the letter that Kennedy "conspired with others to do great economic harm to me and my firm." Stating that Kennedy would spend "at least $10,000.00 to defend this lawsuit regardless of the outcome," respondent wrote that the purpose of the letter was to give Kennedy, and his lawyer, "an opportunity to avoid a

---

**3.** The personal check was drawn on the account of respondent's wife.

lawsuit through negotiations." Respondent then gave Kennedy a June 15th deadline to negotiate, otherwise he would file a civil suit seeking $50 million in damages.

Kennedy testified he was initially angry about the letter and that he then became scared because he felt as if respondent was threatening him in order to get him to somehow recant his story or "maybe lie for [respondent] regarding the criminal trial." Kennedy felt that this was the only possible thing that respondent meant by suggesting that they "negotiate."

Respondent, through cross-examination and his closing argument, suggested that he was merely trying to help Kennedy "settle out" of the lawsuit he intends to file. No lawsuit was ever filed by respondent.

The panel was "unpersuaded" by respondent's characterizations of the letter as an attempt to enter into negotiations. The panel found the letter was patently shocking, outrageous, and an attempt to intimidate a witness for the prosecution in the criminal case against respondent. Moreover, the panel found respondent had failed to respond to Disciplinary Counsel's initial inquiry about the letter. Respondent answered subsequent inquiries by Disciplinary Counsel by asserting the Fifth Amendment because he felt he was being accused of a crime. The panel found that respondent, in effect, failed to respond to the notice of full investigation.

*Jasper Boykin and Mary White Matters*

These two matters involve separate lawsuits brought by Jasper Boykin and Mary White against Allstate Insurance Company. The lawsuits were similar factually, both involved issues of wrongful termination, and Boykin and White knew and had worked with each other. White began her lawsuit *pro se* but eventually hired respondent as her attorney in late 1996; Boykin retained respondent in or about February 1997. Boykin paid the retainer fees for both lawsuits. The main issue in these matters involves respondent's participation in the lawsuits **after** he was placed on interim suspension in April 1997.

Respondent and his associate, James Galmore, prepared complaints in the actions, which were filed in state court but removed to federal court. The initial discovery was to be filed by July 1997 and had not been filed when respondent was placed on interim suspension in April 1997. White learned of

respondent's suspension from an article in the newspaper. She contacted respondent's office but did not receive a letter from respondent regarding his suspension.

Meanwhile, Galmore filed a motion to be relieved from the Boykin case in July 1997. Galmore asserted, *inter alia*, that respondent was primary counsel and had been suspended and that he (Galmore) was not competent to handle the issues involved in the cases. Galmore was relieved as counsel. However, in August 1997, Galmore moved to reappear as counsel in the Boykin case because "arrangements" had been made to continue representation.[4]

On August 1, 1997, Boykin, White, Galmore, and respondent met in Galmore's office. White and Boykin were upset with how their cases had been handled so far. Galmore was hesitant to continue representing them, but respondent was encouraging Galmore to continue to handle their cases. According to the testimony of Galmore, Boykin, and White, respondent stated that he would help Galmore and work "behind the scenes" on the cases.

On that same day, Boykin wrote a check to Galmore for $2,300. He testified that on August 13, he went to respondent's home to complete discovery on his case. Respondent told Boykin the discovery would be promptly finalized and filed with the federal court. Boykin wrote two additional checks that day—one for $1,300 made out to respondent and another to Galmore for $1,000. Respondent also executed promissory notes in favor of Boykin in the amounts of $2,300 and $1,300. Boykin testified that the amounts paid to respondent were not loans, but were legal fees, and the promissory notes were supposed to be respondent's guarantee to perform the work properly.

White's case was dismissed with prejudice in November 1997 for failure to file discovery. After she learned of the dismissal, she telephoned respondent and told him how dissatisfied she was with his handling of the case. When White

---

4. Galmore has been sanctioned by this Court for his conduct in the Boykin and White matters, as well as some other unrelated matters. *See In re Galmore*, 340 S.C. 46, 530 S.E.2d 378 (2000) (agreement for public reprimand accepted). As to the Boykin case, we found that Galmore failed to report respondent's offer to practice law while under suspension to the Disciplinary Commission.

informed respondent she was going to write a letter to the South Carolina Bar complaining about him, respondent offered to pay White $30,000 to not write the letter.

In December 1997, Galmore again withdrew as counsel in the Boykin case. Boykin eventually retained other attorneys and reluctantly settled his case in April 1998. After Boykin wrote a letter regarding the settlement to federal judge Joe Anderson, Judge Anderson convened a hearing at which many of the details regarding respondent's actions were testified to by Boykin.

## DISCUSSION

■ The panel recommended an 18–month definite suspension and that respondent pay the costs of the proceedings. Neither party filed exceptions to the report. "The failure of a party to file a brief taking exceptions to the report constitutes an acceptance to the findings of fact, conclusions of law, and recommendations." Rule 27, RLDE, of Rule 413, SCACR.

■ Although this Court is not bound by the findings of the panel, these findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of the witnesses. *E.g., In re Chastain,* 340 S.C. 356, 532 S.E.2d 264 (2000); *In re Marshall,* 331 S.C. 514, 498 S.E.2d 869 (1998). The Court, however, may make its own findings of fact and conclusions of law, and it is not bound by the panel's recommendation. *Id.* Indeed, the authority to discipline attorneys and the manner in which the discipline is given rests entirely with the Supreme Court. *In re Marshall, supra; In re Hines,* 275 S.C. 271, 269 S.E.2d 766 (1980). Finally, a disciplinary violation must be proven by clear and convincing evidence. *Id.*

In our opinion, the clear and convincing evidence supports the above facts. By his actions, respondent has committed numerous acts of misconduct. Specifically, we find respondent violated the following Rules of Professional Conduct: Rule 4.4, RPC, of Rule 407, SCACR, (failure to respect the rights of third persons); Rule 5.5, RPC (engaging in the unauthorized practice of law); Rule 8.1(b), RPC (failure to respond to lawful demand of a disciplinary authority); and Rule 8.4(e), RPC (engaging in conduct that is prejudicial to the administration of justice).

In addition, respondent violated the following Rules for Lawyer Disciplinary Enforcement: Rule 7(a)(1), RLDE, of Rule 413, SCACR (violating the Rules of Professional Conduct); Rule 7(a)(3), RLDE (knowingly failing to respond to a lawful demand from the Commission); Rule 7(a)(5), RLDE (engaging in conduct tending to pollute the administration of justice or bring the courts or legal profession into disrepute or conduct demonstrating an unfitness to practice law); Rule 7(a)(6), RLDE (conduct violating the oath of office taken upon the admission to practice law in this State); Rule 7(a)(7), RLDE, (willfully violating an order issued by a court of this State).

Furthermore, with regard to the Kennedy matter, we believe respondent has violated the spirit of Rule 4.5, RPC, which states: "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." In the instant case, however, it appears respondent attempted to utilize **the civil system** to gain advantage in **his own criminal matter.**

In our opinion, respondent's actions in the instant case, as well as in the past, "reflect a pattern of unprofessional conduct and demonstrate [respondent's] present unfitness to practice law." *In re Gaines*, 293 S.C. 314, 315, 360 S.E.2d 313, 314 (1987). In *Gaines*, the Court indefinitely suspended the respondent where he committed various acts of misconduct including contacting a witness in a criminal matter and offering her money to drop criminal charges against his client, notarizing a forged signature on a verification form and filing it with the circuit court, and failing to properly account for the funds of a client. The Court noted the respondent's prior public reprimand and indefinitely suspended him.

The Court also imposed an indefinite suspension in the case of *In re Moore*, 345 S.C. 144, 546 S.E.2d 651 (2001). Like respondent in the instant case, Moore's misconduct included, *inter alia*, practicing law while under suspension, failure to cooperate with the Commission, and violations of family court orders regarding child support.

Finally, in the case of *In re Hall*, 333 S.C. 247, 509 S.E.2d 266 (1998), Hall was found to have committed misconduct in two matters with one involving the willful violation of a child

support order. Hall previously had been publicly reprimanded and also had his license suspended for failure to pay Bar dues. The Court imposed the sanction of indefinite suspension.

We find respondent's conduct in this case is egregious and outrageous in many respects. He practiced law while under suspension, threatened civil action against a State witness in his own ongoing criminal case, and willfully failed to pay child support. His past disciplinary matters are likewise not mild in nature. Although the panel recommended an 18–month definite suspension, we believe an indefinite suspension is the more appropriate sanction. *See In re Moore, supra; In re Hall, supra; In re Gaines, supra; see also In re Marshall, supra* (the authority to discipline attorneys and the manner in which the discipline is given rests entirely with the Supreme Court).

Accordingly, we indefinitely suspend respondent and order him to pay the costs of these disciplinary proceedings. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of the Rules for Lawyer Disciplinary Enforcement.

**INDEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ. concur.