23552

In the Matter of Steven Earl SOLOMON, Respondent.

(413 S.E. (2d) 808)

Supreme Court

*Atty. Gen. T. Travis Medlock* and *Asst. Attys. Gen. James G. Bogle, Jr.* and *J. Emory Smith, Jr.,* Columbia, *for complainant.*

*Jack T. Flom,* Myrtle Beach, *for respondent.*

Heard Dec. 3, 1991.

Decided Jan. 13, 1992.

*Per Curiam:*

This is a disciplinary proceeding. Respondent Steven Earl Solomon is alleged to have committed acts of misconduct in respect to several clients.[1] The pleadings, briefs, and record present differing versions of the circumstances surrounding each matter. We find that the facts are as follows.

## RHODES MATTER

Rhodes retained respondent in 1985 to handle a workers' compensation claim. This was respondent's first attempt at handling this kind of claim, and respondent concedes that he did not adequately research South Carolina law regarding worker's compensation[2] prior to proceeding with Rhodes's action. As a result, respondent failed to comply with sections 42-9-220 and 42-15-90 of the workers' compensation stature.

Respondent collected over $1,700 in fees by retaining a percentage of Rhodes's temporary checks. Respondent admits that all he did to earn these fees was to ask Rhodes if the insurer's claim form was completed correctly. When respondent settled Rhodes's claim in 1986, he received approval from the Commission to be compensated attorneys' fees in the amount of one-third of the final settlement. The Commission was not informed that respondent already had collected $1,700 in attorney's fees from Rhodes.

---

[1] The acts complained of took place before September 1, 1990, the effective date of Rule 407, SCACR, Rules of Professional Conduct. Therefore, prior Rule 32, Sup. Ct. Rules, Code of Professional Responsibility, applies.

[2] S.C. Code Ann. §§ 42-1-10, *et seq.* (1976).

## FLOYD/CAIN MATTER

Floyd originally had been represented by another attorney in an action brought by Cain to recover a debt. In 1987, Floyd requested respondent to be substituted as counsel in the place of his original attorney. Shortly thereafter, Floyd's original attorney forwarded requests for admission from Cain's attorney to respondent in order for respondent to prepare a response. Respondent did not answer the requests, nor did he request an extension of time in which to answer.

Floyd testified he would have denied certain allegations in the requests for admission. Because respondent did not respond, however, the allegations were deemed admitted by the trial judge pursuant to Rule 37, SCRCP, and judgment was entered against Floyd.

Respondent offered a variety of excuses for his failure to respond. He stated that he could not get information from Floyd. He also asserted that since he was not substituted as counsel by court order until after the date the answers were due, it would have been improper for him to respond. Respondent ultimately admitted that he simply forgot to answer the requests for admission.

## FLOYD/LOUGHMAN MATTER

Respondent was retained by Floyd and Loughman to represent them in a series of complicated real estate transactions designed to protect Floyd's property from attachment.[3] It is obvious from the record that Floyd and Loughman did not trust each other, and from time to time each client insisted that respondent protect his respective interest against the other. For example, Floyd desired that respondent draw up

---

[3] There is considerable question whether the transfers undertaken by respondent on behalf of Floyd were fraudulent conveyances. *See* S.C.Code Ann. § 27-23-10 (1976) and cases annotated therein (when grantee pays valuable consideration, a conveyance still may be set aside as fraudulent if grantor intends to delay, hinder, or defraud creditors, and his intent can be imputed to grantee). Complainant briefed the fraudulent conveyance issue for the Executive Committee but did not address the potentially fraudulent transactions in its complaint, choosing instead to focus on the conflict of interest arising from respondent's representation of Floyd and Loughman. Neither the Panel nor the Executive Committee made a finding as to respondent's role in Floyd's efforts to evade Cain's judgment. Accordingly, we express no opinion as to whether respondent breached his ethical obligations in regard to his representation of Floyd during Floyd's efforts to delay, hinder, or defraud Cain.

an escrow agreement to prohibit Loughman from converting profits earned from the property to his own use. On another occasion, respondent aided Loughman in transferring his interest in the property to a third party, in contravention of Floyd's contractual right to approve such transfers. Respondent continued representing both parties even after Loughman published an advertisement in the local newspaper indicating that he considered the transactions in which he and Floyd had engaged to be void.[4]

Respondent never suggested to Floyd and Loughman that representing them both could affect his ability to represent each of them effectively. Respondent testified that he did not provide legal counsel to either Floyd or Loughman, but acted merely as a scrivener. The evidence does not support respondent's assertion.

Floyd and Loughman's interest eventually clashed, and Floyd retained respondent to sue Loughman. Within a day after respondent accepted Floyd's retainer, he realized that it would be improper for him to represent one client against the other. He then returned Floyd's retainer and advised him to seek independent legal advice. Respondent concedes that he should have realized earlier during the course of his representation that he could not represent the interest of both clients.

## DISCUSSION

A hearing was held before a Panel of the Board on April 11, 1991 to determine whether respondent's acts constituted unethical conduct. The Panel found that respondent was guilty of misconduct and recommended a private reprimand. The Executive Committee voted 6-0 to adopt the Panel's findings of fact and conclusions of law, and recommended that respondent receive a public reprimand.

This Court is not bound to accept the recommendations of the Panel and the Executive Committee. The duty of adjudging the professional conduct of members of the Bar and taking appropriate disciplinary action rests exclusively with this Court. *In re Hines*, 275 S.C. 271, 269 S.E. (2d) 766 (1980). Although we concur with the Panel and Executive Committee that respondent's acts violated ethical standards,

---

[4] Floyd and Loughman continued their business relationship despite Loughman's advertisement.

we reject the Panel's recommendation of a private reprimand as well as the Executive Committee's recommendation of a public reprimand. We find that the proper sanction is a definite suspension for thirty days.

Respondent's actions violated Rule 32, Sup. Ct. Rules, Code of Professional Responsibility, in the following particulars:

*Rhodes Matter:*
DR 2-106(A) (provides that a lawyer shall not collect an illegal or excessive fee)
DR 6-101(A)(2) (provides that a lawyer shall not handle a legal matter without adequate preparation)
*Floyd/Cain Matter:*
DR 6-101(A)(3) (provides that a lawyer shall not neglect a legal matter entrusted to him)
*Floyd/Loughman Matter:*
DR 5-105 (provides that a lawyer shall not accept or continue employment of multiple clients unless it is obvious he can adequately represent the interests of each and unless each client consents to representation after full disclosure of the possible effect of such representation)
*All Matters:*
Dr 7-101(A)(3) (provides that a lawyer shall not prejudice or damage a client during the course of the professional relationship).[5]

We are dismayed by respondent's lackadaisical attitude toward the interests of his clients and his inability to recognize when they have been prejudiced by his acts. We particularly refuse to countenance respondent's evident belief he could evade sanctions by claiming to be a mere scrivener of the Floyd/Loughman transactions. This Court will not tolerate an attorney's deliberate avoidance of his ethical responsibilities.

This Court will remove an unfit attorney from the practice of law not for the purpose of punishing the attorney, but in order to protect the courts and the public. *In re Galloway,* 278 S.C. 615, 300 S.E. (2d) 479 (1983). Suspension is appropriate, however, when this Court believes an attorney may be able to demonstrate competence in the future. *See In re Amick,* 288 S.C. 486, 343 S.E. (2d) 623 (1986).

---

[5] Respondent's conduct also violates Rule 407, SCACR, Rules of Professional Conduct. *See* Rules 1.1, 1.3, 1.5, 1.7.

Accordingly, we hold that the appropriate sanction is a definite suspension for thirty days.

Definite suspension for thirty days.