23985

In the Matter of Daniel N. BALLARD, Respondent.
(439 S.E. (2d) 846)

Supreme Court

*T. Travis Medlock, Atty. Gen., James G. Bogle, Jr., Asst. Atty. Gen., J. Emory Smith, Jr., Deputy Atty. Gen.*, Columbia, for complainant.

*Daniel N. Ballard, pro se.*

Heard Nov. 2, 1993

Decided Jan. 10, 1994

*Per Curiam:*

In this attorney discipline matter, we impose a definite suspension from the practice of law for a period of one year with reinstatement contingent upon reimbursement of the injured clients' losses consistent with this order and compliance with all other requirements imposed by Rule 407, SCACR, the Rules of Professional Conduct.

## DISCUSSION

Three separate grievances were filed against Mr. Ballard ("Respondent"). The Respondent is also charged with failing cooperate with the Board of Grievances.

A. *Grievances filed:*

### 1. *The Wells Matter*

In May 1991, the Respondent closed the sale of Mr. Wells' property in Anderson, South Carolina. The Respondent collected the proceeds from the purchaser and deposited the proceeds in his escrow account. The Respondent did not, however, immediately disburse the proceeds to the seller, Mr. Wells.

Mr. Wells attempted to contact the Respondent concerning the proceeds from the sale. Unable to contact the Respondent, Mr. Wells hired a lawyer from Cleveland, Ohio to collect the proceeds from the sale of his property. The Ohio lawyer, Mr. Zingales, telephoned and wrote the Respondent. The Respondent never responded. Finally, Mr. Zingales filed a grievance on behalf of Mr. Wells with the South Carolina Bar in January 1992.

The Respondent was contacted by a member of the Board of Grievances assigned to investigate the Wells matter. The respondent presented to the Board member a handwritten letter and a copy of a check dated April 10, 1992 which was purported to have been mailed to Mr. Wells.

On May 18, 1992, Mr. Zingales wrote the the Grievance Board member assigned to the Wells matter to inform him that Mr. Wells still had not received the proceeds from the sale of his property. Ultimately, Mr. Wells received a check from the Respondent's escrow account which cleared the bank on August 28, 1992, over one year after the closing. Thereafter, Mr. Wells forwarded to the Respondent Mr. Zingales attorney's fee bill of $1,700.00, a debt incurred by Mr. Wells in his efforts to collect the proceeds from the sale of his property.

## 2. *The Propes Matter*

Mr. and Mrs. Propes retained the Respondent to write a contract of sale and handle the loan closing on a piece of real estate they were purchasing from a family member. After the contract was executed, the Propes paid $300.00 loan application fee to the lender. On July 24, 1992, the lender sent the Respondent the loan package which included an attorney questionnaire. The attorney questionnaire requested, among other things, information on the Respondent's professional insurance. The Respondent did not have professional insurance and he did not complete the form.

The Respondent was notified on September 2, 1992 that the loan commitment would expire in fourteen days. A closing was scheduled for September 16, 1992, the final day of the loan commitment. Mrs. Propes arrived at the bank at the appointed time, the Respondent did not attend, and the loan closing did not take place. As a result, the Propes were forced

to make another loan application and another attorney closed the loan. The Propes lost their original application fee of $300.00.

### 3. *The Brooks Matter*

At the Panel hearing, the Panel learned that a third grievance had been filed against the Respondent. The Respondent agreed that the matter would be heard via depositions presented to the Panel.

Mr. Brooks paid the Respondent $750.00 as a retainer fee on April 13, 1992. The Respondent did no work on the file and Mr. Brooks was forced to hire another attorney. As of the date of Mr. Brooks' deposition, he had not received a refund of his retainer nor had he been able to get his file from the Respondent.

### B. *Failure to Cooperate with the Board*

The Chairman sent the Respondent two letters each on the three grievances filed for a total of six letters. The Respondent never responded.

A Board member was assigned to investigate the Wells matter. The Board member telephoned the Respondent and set up an appointment with the Respondent to discuss the Wells matter. The Respondent cancelled and rescheduled numerous appointments before finally meeting with the Board member on April 14, 1991.

At the April 14, 1991 meeting, the Respondent presented the Board member with a copy of a check and handwritten letter purportedly mailed to Mr. Wells. Mr. Wells never received that check and no plausible explanation has been given to the Board or this Court as to what happened to the check. The Respondent did not present a stop payment form on any other evidence which would indicated that the April 10, 1992 check was in fact mailed to Mr. Wells.

The Board's Final Report required the Respondent to pay the costs of this action on or before September 20, 1993. This Court received the costs by letter postmarked October 6, 1993. The Respondent did not remit the costs until the Supreme Court staff contacted or attempted to contact him at least three times.

Finally, the Respondent has minimally participated in this

action. He attended the panel hearing. While he was scheduled to attend each of the depositions taken in this action, each time he or his secretary telephoned the day of the deposition and claimed illness or car trouble. He did not file a brief or otherwise respond to his action in this Court, prompting this Court to assure the Respondent had notice of the proceeding by having him personally served with the Rule to show Cause by an officer of the South Carolina Law Enforcement Division. The Respondent did not attend the Rule to Show Cause in this Court on November 2, 1993. Again, his secretary telephoned this Court and informed the clerk's office that he was ill and would not attend.

The Respondent's behavior raises a serious question as to whether the Respondent attempted to mislead the Board into believing that he had mailed the April 10, 1992 check to Mr. Wells. Further, the Respondent's numerous excuses for failing to attend meetings, depositions, and hearings in this matter raises concerns as to the validity of the Respondent's excuses.

## CONCLUSION

The Respondent's conduct in representing his clients and in the investigation of the grievances filed against him violated numerous Rules of Professional Conduct.[1] The Panel found, and we agree, that the Respondent has "demonstrated an unexplained pattern of neglecting client matters and ignoring directives of the Board, in serious disregard of his professional responsibilities." Panel Report at 5. Since the Panel Report, the Respondent has also ignored this Court.

---

[1] The Respondent's handling of the Wells matter violated Rule 407, SCACR, Rules of Professional Conduct, Rule 1.15 (lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive); Rule 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information).

In the Propes matter, the Respondents again violated Rule 407, SCACR, Rules of Professional Conduct, Rule 1.3 (failing to act with reasonable diligence and promptness in representing a client); Rule 1.4(a) (failing to keep client reasonably informed about the status of a matter and comply promptly with reasonable requests for information); Rule; 1.1 (a lawyer shall provide competent representation to a client).

In the Brooks matter, the Respondent violated Rule 407, SCACR, Rules of Professional Conduct, Rule 1.3 (failed to act with reasonable diligence and

Both the Panel and the Board recommended indefinite suspension from the practice of law. The ultimate authority, however, to determine appropriate sanctions for attorney conduct rests solely with the Supreme Court. *Matter of Lempesis*, 293 S.C. 510, 362 S.E. (2d) 10 (1987).

Sanctions ranging from public reprimand to disbarment have been imposed by this Court on attorneys for actions encompassing similar breaches of the attorney's professional responsibility. *See e.g. Re: In the Matter of William M. Bruner*, 283 S.C. 114, 321 S.E. (2d) 600 (1984) (public reprimand for neglect of legal matters and failure to cooperate with the Board); *In the Matter of Michael L. Haddock*, 283 S.C. 116, 321 S.E. (2d) 601 (1984) (public reprimand for neglecting legal matters and failure to cooperate with the Board); *In the Matter of Malcolm M. Crosland*, 270 S.C. 546, 243 S.E. (2d) (1978) (disbarment for taking case and not proceeding and not returning retainer and documents, failing to respond to Board, collecting funds and failing to disburse as directed by client); *In the Matter of Laurence Harmon Nida*, — S.C. —, 432 S.E. (2d) 462 Op. No. 23871 (S.C. Sup. Ct. filed June 7, 1993) (Davis Adv. Sh. 16 at 18) (definite suspension for neglecting legal matters and not cooperating with the Board).

We are gravely concerned about the Respondent's unexplained neglect of his clients' matters, his failure to cooperate with the Board, and the harm which his neglect has caused to his clients. We, therefore, hold that Daniel N. Ballard is hereby suspended from the practice of law for a period of one year. Daniel N. Ballard shall within ten (10) days of this Order (1) pay the sum of $1,700 to Mr. Wells; (2) pay the sum of $300.00 to Mr. and Mrs. Propes; (3) pay the sum of $750.00 to Mr. Brooks, and return Mr. Brooks' file to Mr. Brooks or his present attorney. Reinstatement to the South Carolina Bar after a period of one year is contingent upon all applicable South Carolina Bar procedures and full compliance with this Order.

---

promptness in representing a client): Rule 1.4(a) (failed to keep a client reasonably informed about the status of a matter and comply promptly with reasonable requests for information).

Finally, the Respondent's failure to cooperate with the Board and this Court further violates Rule 407, SCACR, Rules of Professional Conduct, Rule 8.4(a), Rule 8.4(e). *See also matter of Foushee*, 296 S.C. 182, 371 S.E. (2d) 154 (1988); *Matter of Treacy*, 277 S.C. 514, 290 S.E. (2d) 240 (1982).