494 S.E.2d 804

**In the Matter of Fred Henderson MOORE, Respondent.**

**No. 24725.**

Supreme Court of South Carolina.

Heard Sept. 16, 1997.
Decided Dec. 16, 1997.

Attorney General Charles M. Condon and Assistant Deputy Attorney General J. Emory Smith, Jr., Columbia, for complainant.

Russell Brown, Charleston, for respondent.

PER CURIAM:

In this attorney disciplinary matter, respondent, Fred Henderson Moore, is charged with several acts of misconduct arising out of his representation of several of his clients. We find respondent committed misconduct and impose a definite suspension from the practice of law for a period of one year.

## PROCEDURAL BACKGROUND

This disciplinary matter concerns several complaints filed against respondent between March 1995 and May 1996. Respondent denied all allegations of misconduct. A full hearing on these matters was held on June 13, 1995, February 28, 1996, and July 24, 1996. Respondent was represented by counsel. On January 22, 1997, the Hearing Panel (Panel) issued its report finding misconduct and recommending a definite suspension for three months. The Panel determined that some of the allegations in the complaints did not constitute misconduct. The Interim Review Committee [1] (Committee) of the Board of Commissioners on Grievances and Disci-

---

1. The order adopting the new Rules for Lawyer Disciplinary Enforcement provided that any disciplinary case in which a hearing had been held by a hearing panel prior to January 1, 1997, would continue to conclusion under the former Rule on Disciplinary Procedure. The Interim Review Committee was created to fulfill the functions performed by the Executive Committee under Paragraph 14(a) of the former Rule on Disciplinary Procedure in those cases.

pline agreed with the Panel's findings of facts and conclusions of law; however, it disagreed with the recommended sanction. The Committee recommended an indefinite suspension.

Both respondent and complainant filed exceptions and briefs with this Court. Respondent claims the Panel erred in finding any misconduct. The complainant claims the Panel erred in not finding respondent mishandled two appeals and in not finding respondent had engaged in a pattern and practice of neglecting legal matters entrusted to him and incompetently representing his clients.

## DISCIPLINARY VIOLATIONS

■ Although this Court is not bound by the findings of the Panel and Committee, these findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of witnesses. *Matter of Yarborough*, 327 S.C. 161, 488 S.E.2d 871 (1997). However, we may make our own findings of fact and conclusions of law. *Id.* Further, a disciplinary violation must be proven by clear and convincing evidence. *Id.*

We agree with the Panel's findings; however, we also find respondent has engaged in a pattern and practice of neglecting legal matters entrusted to him and incompetently representing his clients to their detriment.

### Clarendon County Case

■ In September 1993, respondent filed an action for a client in the Clarendon County Court of Common Pleas (Clarendon County case).

Counsel for the defendants in this matter served various discovery requests, including Interrogatories, Request for Production and Request for Admissions, upon respondent. Except for a request for an extension made on December 13, 1993, respondent failed to answer or reply to any of the discovery requests and failed to return telephone calls or reply to correspondence concerning the discovery requests. Because of this failure to reply, the Request for Admissions were deemed admitted. Rule 36, SCRCP. Subsequently, counsel for the defendants moved to compel responses to the discov-

ery. Counsel provided notice to respondent of these motions. Respondent claimed he had assigned the discovery portion of this case to an associate. However, respondent admitted he was principally responsible for the file.

On May 26, 1994, the Deputy Clerk of Court for Clarendon County prepared a non-jury roster and mailed it to all counsel who had cases on the roster. The roster recited it was for the term of non-jury court beginning the week of June 6, 1994, and the assigned judge would hear motions, appeals and non-jury cases on Friday, June 10, 1994, beginning at 9:30 a.m. There were two parts to the roster: a motions roster and a trial roster. This case appeared on both rosters.

According to the testimony of the Deputy Clerk of Court, on May 26, 1994, a copy of the roster was mailed to respondent at 41 Morris Street, Post Office Box 20275, Charleston, South Carolina 29413, the address which appeared on the Summons and Complaint. This roster was not returned to the clerk's office by the Postal Service.

Respondent claimed he never received the roster. According to respondent, he moved his office to 150–A St. Phillip Street in mid-December 1993; however, respondent retained the same post office box address. Respondent failed to notify others, including the Clarendon County Clerk of Court and opposing counsel, of his move. As evidence that respondent was having difficulty receiving mail during this time period, respondent introduced a letter sent by the United States Postal Service apologizing to its customers for misboxing and missending mail. However, respondent offered no evidence that the Clarendon County roster was missent or misboxed. Respondent conceded the post office box address used by the Clerk of Court's Office was correct. Further, according to respondent, all his mail was posted to his post office box regardless of the mailing address used.

The Motions to Compel were heard on June 10, 1994. Counsel for defendants was present. Respondent was not present and did not contact the court to explain his absence. The judge granted defendants' motions. Counsel for defendants remained in the courtroom and waited until the case was reached on the trial roster. When the case was called, respondent still was not present and counsel for defendants

moved for dismissal of the complaint for lack of prosecution. Defendants' motion was granted.

After receiving the order of dismissal, respondent moved for reconsideration and for an order to defer judgment. These motions were denied because the judge found respondent had failed to present any evidence to substantiate any grounds to justify vacating the previous order of dismissal. Respondent then filed and served notice of his intent to appeal. During the early stages of the appeal, the Supreme Court determined the transcript had not been timely ordered by respondent and instructed respondent to forward an original and six copies of a Motion to Order Transcript Out of Time, along with proof of service and a $25.00 filing fee, within ten days or the appeal would be dismissed. Respondent failed to respond. After the appeal was dismissed, respondent notified the Supreme Court the transcript had been requested from the court reporter in a timely fashion.

The Panel and Committee found respondent received notice from the Clarendon County Clerk of Court scheduling the Motions to Compel and the non-jury trial for June 10, 1994, but respondent failed to appear, thereby violating Rule 407, SCACR, Rule 1.1 (lacked competence in representing his client) and Rule 1.3 (failed to act with reasonable diligence and promptness in representing a client). The Panel and Committee also found respondent demonstrated a lack of competence in representing his client by failing to timely order the transcript and by failing to file a motion with the Supreme Court to order the transcript out of time. The Panel made no findings about respondent's failure to reply to the opposing parties' discovery requests.

We agree with the Panel's finding respondent committed misconduct by violating Rule 407, SCACR, Rules 1.1 and 1.3 and Rule 413, SCACR, § 5(E), in the handling of the Clarendon County case by failing to appear at the scheduled court date and by causing the appeal to be dismissed. This misconduct severely prejudiced his client. Further, we find clear and convincing evidence that respondent's failure to reply to discovery requests, including the Request for Admissions, also violated Rules 1.1 and 1.3. *See Matter of Solomon,* 307 S.C. 1, 413 S.E.2d 808 (1992) (finding misconduct where attorney

failed to respond to requests for admissions so they were deemed admitted and judgment was granted against client). Although respondent testified he turned over all discovery matters in this case to his associate, respondent retained control of the case and it was his responsibility to ensure his associate was appropriately responding to discovery requests. Rule 407, SCACR, Rule 5.1 (responsibilities of the supervisory lawyer).

## Medical Malpractice Matter

■ A client retained respondent in early 1991 to represent her in connection with a medical malpractice claim allegedly arising from improper medical treatment following an injury the client sustained in August 1990. The improper treatment occurred between August and December 1990 and the client testified she was aware she had been misdiagnosed by December 1990.

Respondent did not file suit on behalf of the client until June 27, 1994. Respondent testified he waited to file suit until he obtained an opinion from another physician that the client's treating physician committed malpractice. Respondent stated that he did not think the statute of limitations would run on this cause of action until he had obtained such an opinion.

The Panel found the statute of limitations on the client's claim would have expired between August 1993 and December 1993. Therefore, the Panel found respondent demonstrated a lack of professional competence and failed to act with reasonable diligence and promptness in representing the client in this matter. Rules 1.1 & 1.3.

We agree with the Panel's findings. Respondent's testimony at the Panel hearing demonstrates his lack of understanding of the statute of limitations and the discovery rule and is evidence of incompetency. Further, respondent's delay in filing suit was fatal to his client's action.

## Ford Motor Company Matter

■ In early 1994, respondent was retained to handle a claim against Ford Motor Company for an incident that allegedly occurred on January 17, 1994. This client alleged

she received personal injuries when she was trapped in a 1992 Ford Tempo vehicle by a faulty seat.

Both the client and respondent admitted there was not a written contingency fee agreement in the Ford Motor Company matter and respondent further admitted there was no written agreement in two other matters handled by respondent on behalf of this client.

Additionally, respondent testified he recorded a conversation he had with a relative of this client concerning the client's Ford Motor Company claim. Respondent alleged it was his belief that the relative had come to his office to extort money from him on behalf of this client. Respondent claimed the relative advised him from the outset of the meeting that he was recording the conversation and that respondent then told the relative he was also recording the conversation. Testimony given by respondent on cross-examination indicated respondent's recorder was on when the relative entered his office. Mr. Robert Bernstein, a member of the Board of Commissioners on Grievance and Discipline, testified, while he was investigating this complaint, respondent advised him that he had secretly recorded a conversation between himself and the relative. Mr. Bernstein testified when he asked respondent if the individual knew he was being recorded the respondent answered "Oh, no, they did not know."

The Panel found respondent violated Rule 1.5 because his contingency fee agreements were not in writing. Further, the Panel found respondent violated the Rules of Professional Conduct by improperly recording a conversation without a party's knowledge or consent. *See Matter of Anonymous Member,* 304 S.C. 342, 404 S.E.2d 513 (1991).

We agree with the Panel's findings. The evidence clearly and convincingly supports the finding respondent failed to have written contingency fee agreements with this client for the Ford claim and for two other matters. This is a violation of Rule 1.5 requiring such agreements be in writing. The evidence also supports the finding that respondent secretly recorded a conversation with the relative because, even if respondent's version of facts is believed, respondent's recorder was already running when the relative entered his office.

Secretly recording a conversation violates the Rules of Professional Conduct. *Id.*

### Bankruptcy Matter

■ In 1990, respondent agreed to represent a client in connection with an employment discrimination suit against Willbrook Plantation. The lawsuit was filed in the United States District Court, Charleston Division, on July 5, 1990, but was not served until October 1990. Respondent later amended this complaint to name Litchfield Company as the defendant. Litchfield Company filed a Chapter 11 bankruptcy petition on March 15, 1991. On July 23, 1991, the U.S. District Court issued an order staying this lawsuit.

Respondent did not file a claim on behalf of his client in the bankruptcy proceeding. Respondent testified he was not hired by this client to protect his interest in the bankruptcy proceeding and because the bankruptcy matter was pending in a North Carolina court where respondent was not licensed to practice law, he could not assist his client. Further, respondent indicated it was his belief that once the automatic stay was granted there was nothing he could do until the bankruptcy proceeding was concluded and the stay lifted. Respondent admitted he never advised his client of the need to protect his interest in bankruptcy court.

An expert in bankruptcy matters, Mr. Bernstein, testified respondent should have filed a claim with the bankruptcy court or asked the bankruptcy court to lift the stay. Further, Mr. Bernstein stated respondent was unaware he needed to file a claim. The client testified respondent never advised him any action should be taken concerning the bankruptcy matter.

Respondent admitted he did not have a written contingency fee agreement with this client. According to respondent, no written agreement was required because he requested attorney's fees as part of the damages in the lawsuit.

The Panel found respondent failed to act with reasonable diligence and promptness in representing this client by failing to serve the defendant within thirty days after filing suit. Rule 1.3. Respondent placed this client in imminent danger of having his lawsuit dismissed. Additionally, the Panel found respondent engaged in conduct demonstrating a lack of pro-

fessional competence in the practice of law by failing to file a claim in the bankruptcy court on this client's behalf after receiving notice the defendant had filed for bankruptcy or by failing to move before the bankruptcy court for release of the automatic stay. Rule 1.1. Further, the Panel found respondent did not have a written contingency fee agreement with this client as required by Rule 1.5.[2]

We agree with the Panel's findings. Respondent risked dismissal of his client's lawsuit because he delayed the service of the complaint. *See* Rules 1.1 & 1.3. Further, in our opinion, respondent should have attempted to protect this client's interest in the bankruptcy proceeding. Even though this client did not specifically instruct respondent to protect his interest, respondent undertook this responsibility when he agreed to represent the client in the employment discrimination lawsuit. Rules 1.1 & 1.3.

### Alleged Mishandling of Appeals

The complainant contends the Panel erred in not finding misconduct by respondent in his handling of two appeals. Specifically, the complainant claims respondent acted without diligence and competence in handling these appeals and respondent attempted to mislead this Court with respect to one of the appeals. Rules 1.1, 1.3 & 3.2 (misleading a tribunal).

In April 1994, respondent filed an appeal on behalf of a client (First Appeal). Respondent failed to serve and file the Appellant's Initial Brief and Designation of Matter, thereby resulting in dismissal of the appeal on May 10, 1994. On June 9, 1994, respondent's petition to reinstate the appeal and for an extension of time to file the Initial Brief and Designation of Matter was granted. Subsequently, this appeal was dismissed on August 24, 1994, due to respondent's failure to provide proof of service of the Record on Appeal. Respondent's

2. We note that from the record it appears this representation was begun before implementation of the Rules of Professional Conduct on September 1, 1990. Under the prior disciplinary rules, the Code of Professional Conduct, there was no requirement for the contingency fee agreement to be in writing. DR 2–106, Rule 32, S.C.Sup.Ct.Rules (repealed 1990). Therefore, the Panel erred in finding respondent committed misconduct by not having a written fee agreement with this client.

petition for reinstatement was denied and the appeal was dismissed on October 7, 1994.

Respondent testified he was unable to proceed with this appeal because his client was unable to provide him with the funds necessary to print the Initial Brief and Designation of Matter. Respondent claimed his client promised to provide the funds but never did. Respondent testified he could not afford to pay the costs of printing the appeal documents from his own personal funds. However, respondent's petitions for reinstatement make no mention of his client's inability to pay.

In a separate appeal filed by respondent (Second Appeal), on May 8, 1995, respondent filed a Motion to Enlarge Time to File Initial Brief and Record on Appeal with the Supreme Court. In this motion, respondent stated he had experienced a delay in providing the court reporter with funds for the transcript. The Court denied respondent's motion on June 19, 1995, and directed respondent to pay the court reporter within five days. The Court allowed respondent thirty days to file his Initial Brief after receipt of the transcript. Respondent actually received the transcript on or about June 14, 1995. On July 14, 1995, respondent filed a second Motion to Enlarge Time to File Initial Brief and Record on Appeal with the Supreme Court. In that motion, respondent stated he had not previously requested an extension of time for the filing of his Initial Brief and Record on Appeal. The Supreme Court granted this motion and appeal in this case was still pending before the Court as of the date of hearings before the Panel.

Respondent testified when he filed the July 14, 1995 motion, it was his belief the Court had treated his May 8, 1995 motion as a motion to extend time to order the transcript; therefore, he did not mislead the Court.

As to the First Appeal, the Panel found respondent's testimony credible and found it was not the duty of respondent to finance the costs of his client's appeal. The Panel recommended dismissal of this matter. As to the Second Appeal, the Panel found no intent on the part of respondent to mislead the Supreme Court, and therefore, recommended dismissing this portion of the complaint.

In our opinion, the Panel was correct in dismissing these matters. The Panel is in the best position to judge the

credibility of its witnesses; therefore, this Court respects its finding of credibility on behalf of respondent concerning these appeals. *Yarborough, supra.* Although we do not find misconduct in respondent's handling of the two appeals, respondent's handling of the appeals demonstrates a lack of diligence in that respondent delayed requesting extensions until the last minute or until after the appeal had been dismissed.

### *Pattern and Practice of Neglect*

■ The complainant contends respondent's acts of misconduct demonstrate a continuing lack of diligence and competency. We agree.

■ Neither the Panel nor the Committee found respondent had engaged in a pattern of neglecting legal matters and incompetently representing his clients. However, in our opinion, considering the entire record, the evidence clearly and convincingly shows a pattern of neglecting legal matters and incompetently representing his clients to their detriment.

### *SANCTION*

The authority to discipline an attorney and the manner in which the discipline is given rests entirely with the Supreme Court. *Matter of Hines,* 275 S.C. 271, 269 S.E.2d 766 (1980).

The Panel recommended a three month suspension.[3] The Committee recommended an indefinite suspension. These recommendations were based upon the findings of lack of diligence, incompetence, failure to have a written retainer agreement, improperly recording a conversation and the fact that respondent had been disciplined in the past.[4]

■ Incompetence is subject to sanction by this Court. *Matter of Warder,* 316 S.C. 249, 449 S.E.2d 489 (1994) (public reprimand for incompetence as well as neglect). Further,

---

**3.** The Panel noted ordinarily the violations committed by respondent would only merit a public reprimand.

**4.** Respondent received an indefinite suspension for trust account violations, *Matter of Fred Henderson Moore,* 280 S.C. 178, 312 S.E.2d 1 (1984), *reinstatement granted,* 298 S.C. 13, 377 S.E.2d 922 (1989); and a public reprimand for neglecting several legal matters, *Matter of Moore,* 275 S.C. 280, 269 S.E.2d 771 (1980).

secretly recording a conversation is subject to sanction. *See Matter of Anonymous Member, supra.* The appropriate sanction for neglect of several client matters generally is a public reprimand provided the clients are not greatly prejudiced. *Matter of Alexander,* 301 S.C. 212, 391 S.E.2d 254 (1990); *Matter of Gates,* 295 S.C. 516, 369 S.E.2d 841 (1988). However, when the client is prejudiced and the attorney refused to cooperate with the Board's investigation, the sanction imposed has been as great as a one year suspension. *See Matter of Acker,* 308 S.C. 338, 417 S.E.2d 862 (1992) (six month suspension); *Matter of Palmer,* 298 S.C. 324, 380 S.E.2d 813 (1989) (one year suspension); *Matter of Ballard,* 312 S.C. 227, 439 S.E.2d 846 (1994) (one year suspension).

While there is no suggestion respondent failed to cooperate with the investigation, respondent's clients were severely prejudiced. As a result of respondent's neglect and incompetency, the verdict was directed against his client and his client's appeal was dismissed in the Clarendon County case and the statute of limitations expired in the malpractice claim. Further, in our opinion, the facts demonstrate a detrimental pattern of neglect and incompetency. Therefore, we find the appropriate sanction is a suspension from the practice of law for one year.

Respondent shall file, within fifteen (15) days of this opinion, an affidavit with the clerk of this Court stating he has complied with Paragraph 30 of Rule 413, SCACR.

DEFINITE SUSPENSION.