572 S.E.2d 291

**In the Matter of R. Daniel DAY, Jr., Respondent.**

No. 25552.

Supreme Court of South Carolina.

Heard Sept. 17, 2002.

Decided Nov. 4, 2002.

Attorney General Charles M. Condon, Assistant Deputy Attorney General J. Emory Smith, Jr., and Assistant Disciplinary Counsel Barbara M. Seymour, all of Columbia, for the Office of Disciplinary Counsel.

R. Daniel Day, Jr., of Seneca, pro se.

PER CURIAM:

This is an attorney disciplinary matter. After a hearing, the Commission on Lawyer Conduct concluded respondent committed misconduct and recommended a public reprimand. Neither the Office of Disciplinary Counsel nor respondent except to the recommended sanction.

## *Matter I*

At the hearing, Attorney to Assist Disciplinary Counsel (ATA) Donald C. Coggins, Jr., testified he mailed a letter to respondent requesting respondent contact him for an appointment. Coggins testified respondent did not respond. Respondent testified he did not remember receiving Coggins' letter, but agreed he was responsible for mail delivered to his office.

ATA William M. Hagood, III, testified he mailed respondent two letters, the second of which asked respondent to contact him to schedule an appointment. Hagood stated he left two messages with respondent's office; respondent did not contact him. Ultimately, respondent complied with a deposition subpoena. Respondent acknowledged he did not respond to Hagood in a timely manner.

## *Matter II*

Client A testified, although respondent withheld money for tax purposes during a real estate transfer, he failed to forward the money to the Department of Revenue (DOR). Client A stated he informed respondent of the error and it took approximately six weeks to clear up the matter. Client A testified, on occasion, respondent failed to timely respond to his communications.

Respondent testified his office erroneously closed Client A's file. He explained, once he realized the DOR transaction had

not been completed, he immediately contacted the DOR, forwarded the taxes, plus interest, and eventually was able to get the purchasers to sign the necessary documentation.[1] Respondent accepted responsibility for this matter, noting he should have corrected the matter more quickly.

### Matter III

Client B testified he hired respondent to represent him in a criminal matter. He stated, after his conviction and sentence, he repeatedly contacted respondent for file material but respondent was not forthcoming. Respondent testified he gave Client B his file when Client B was in court for an unrelated matter.

### Matter IV

Respondent represented parties during a closing in early May 1998. The seller intended to convey 8.2 acres of land and retain approximately one acre of contiguous property.

The buyer testified, a month or two after the closing, he discovered he had purchased the one acre parcel and immediately went to respondent's office to discuss the situation. Respondent stated he would take care of the problem. The buyer testified he telephoned respondent approximately twenty times; respondent returned only two calls. The buyer was notified in late May 1999 that the corrected deed had been filed in April 1999.

A mortgage broker testified he obtained the loan and mortgage for the buyer. He explained how the closing documents erroneously described the sale of the one acre rather than the eight acres. The broker testified that once the error with the property was discovered, respondent contacted him to correct the situation. By this time, the loan and mortgage had been sold to another lender and the new lender had difficulty locating the documents. The broker testified he and respondent worked constantly in an attempt to get the new lender to locate the documents as quickly as possible.

Respondent testified, at the closing, the parties reviewed the survey and deed. No one noticed any error. Once the buyer contacted him about the error, respondent stated he

---

1. There is no claim respondent misappropriated these funds.

ordered a new survey of the eight acres. He testified it took quite a long time for the lender to locate the original loan papers. Respondent apologized to the buyer for the error.

## Matter V

Client C testified he received a copy of an order appointing respondent to represent him on his post-conviction relief application. According to Client C, respondent did not contact him until after he filed a complaint with the Commission on Lawyer Conduct.

Respondent stated he did not receive the order of appointment. After he received communication from the Commission on Lawyer Conduct informing him of Client C's complaint, he obtained a copy of the order of appointment from the Oconee County Clerk of Court's office.[2] Ultimately, respondent represented Client C at the PCR hearing and obtained a favorable ruling.

## Matter VI

Party A testified he sued respondent's client, Client D, in magistrate's court claiming Client D owed him money for appraisal work. According to Party A, while in magistrate's office for jury selection, respondent telephoned Party A and asked for copies of the invoices. Party A testified respondent indicated Client D owed Party A and a trial was unnecessary. Immediately after the conversation, Party A faxed the invoices to respondent but did not receive a response.

A week later, Party A sent a letter to respondent inquiring about the status of the unpaid invoices; again, he received no response. Thereafter, Party A testified he telephoned respondent's office probably 25 days in a row, but received no response. Ultimately, the case was restored to the trial roster. Approximately a year later, the parties settled.

Respondent testified, at the time he filed the answer, he requested Party A provide copies of the appraisals. The magistrate telephoned Party A when he did not appear for jury selection. According to respondent, Party A then sent

---

**2.** According to the parties' stipulation, the Oconee County Clerk of Court places orders of appointment in cubbyholes at the courthouse. As a result of this incident, respondent stated he instructed the Clerk of Court to mail orders to his office.

some invoices, but not the requested appraisals. Respondent testified he never promised Party A his client would settle the matter.

## Matter VII

Client E testified respondent agreed to represent her in a personal injury matter. She admitted respondent told her he had previously represented the potential defendants on other matters, but at the time stated he did not have a conflict. While she admitted respondent sent her to two other attorneys, she testified these attorneys were to assist respondent with her case. Not until later did respondent tell Client E he had a conflict and would not be able to represent her.

Respondent testified he immediately told Client E he could not represent her in her personal injury claim as he had a conflict and, therefore, recommended two other attorneys. He stated he represented Client E on other matters.

## Matter VIII

Client F testified she was charged with causing an automobile accident. She retained respondent the same month to represent her as a plaintiff in the matter. Client F stated respondent failed to return her telephone calls on five occasions. She testified, several months after she filed a complaint with the Commission on Lawyer Conduct, respondent served the pleadings in the action.

Client F agreed respondent advised it would be better to file suit after the traffic charge against her was resolved. She testified she did not remember respondent informing her that her own insurance company had paid the defendant's damages and was not supporting her claim.

Respondent testified he told Client F her claim would be difficult to substantiate as the witnesses to the automobile accident were wishy-washy, but admitted he could have been clearer. He stated he did not communicate with Client F properly or frequently enough.[3]

## Matter IX

Client G paid respondent a retainer on January 28, 1999, and terminated his representation by letter dated February

---

3. Respondent ultimately represented Client F at trial.

46

15, 1999. Client G complained respondent had not contacted him and failed to return his telephone calls.

On March 15, Client G filed a complaint with the Commission on Lawyer Conduct. Three days later, the Commission requested respondent provide a response. By letter dated April 7, 1999, Disciplinary Counsel again requested respondent respond to the matter. By letter dated April 14, 1999, respondent stated he had interviewed Client G and prepared pleadings. He stated his office advised Client G to return to the office to review and sign the pleadings.

Respondent testified he did not remember receiving Client G's February 15th letter. He stated he had prepared Client G's pleadings and was waiting for him to return to the office to review and sign the papers. Respondent returned Client G's retainer.

After considering the testimony and exhibits from the hearing, the Commission on Lawyer Conduct concluded respondent breached various provisions of the Rules of Professional Conduct (Rule 407, SCACR) and the Rules for Lawyer Disciplinary Enforcement (Rule 413, SCACR). Finally, the Commission concluded respondent committed misconduct by failing to cooperate with the investigations of the Office of Disciplinary Counsel. *Matter of Treacy,* 277 S.C. 514, 290 S.E.2d 240 (1982).

While this Court is not bound by the findings of the Commission on Lawyer Conduct, its findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of witnesses. *Matter of Moore,* 329 S.C. 294, 494 S.E.2d 804 (1997); *Matter of Yarborough,* 327 S.C. 161, 488 S.E.2d 871 (1997). Nonetheless, the Court may make its own findings of fact and conclusions of law. *Id.* A disciplinary violation must be proven by clear and convincing evidence. *Id.*

We conclude the testimony at the hearing establishes by clear and convincing evidence respondent engaged in misconduct by failing to handle client matters diligently and competently, by failing to adequately communicate with clients, by failing to promptly deliver funds, and by neglecting

legal matters.[4] In addition, we conclude respondent failed to respond to requests for information from the Office of Disciplinary Counsel. *In the Matter of Treacy, supra.* We note respondent has acknowledged his error.

This Court has imposed a wide range of sanctions where misconduct involves neglect of legal matters, failure to deliver funds, failure to handle client matters diligently and competently, failure to communicate with clients, and failure to cooperate with the Commission on Lawyer Conduct. *See Matter of Mayer,* 325 S.C. 1, 478 S.E.2d 286 (1996) (public reprimand); *Matter of Shibley,* 320 S.C. 362, 465 S.E.2d 356 (1995) (60 day suspension); *Matter of Tootle,* 319 S.C. 392, 461 S.E.2d 824 (1995) (4 month suspension); *Matter of Ballard,* 312 S.C. 227, 439 S.E.2d 846 (1994) (1 year suspension); *Matter of Nida,* 315 S.C. 132, 432 S.E.2d 462 (1993) (9 month suspension); *Matter of Acker,* 308 S.C. 338, 417 S.E.2d 862 (1992) (6 month suspension). In this instance, we find respondent's misconduct warrants a public reprimand. Respondent is hereby publicly reprimanded for his misconduct. In addition, respondent is ordered to pay the costs of the disciplinary proceeding ($2,504.78). This amount shall be remitted to the Commission on Lawyer Conduct in accordance with Rule 413, SCACR.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

4. We find violations of Rule 407, SCACR, particularly Rule 1.15 (failure to deliver promptly to client or third party funds or files the client or third party was entitled to receive), Rule 1.3 (failure to act with reasonable diligence and promptness in representing a client), Rule 1.4(a) (failure to keep a client reasonably informed about the status of a matter and comply promptly for requests for information), Rule 1.1 (failure to represent a client competently), Rule 1.2 (failure to consult with a client as to the objectives of the representation and the means by which they are to be achieved), Rule 8.4(a) (violated the Rules of Professional Conduct), and Rule 8.4(e) (engaged in conduct that is prejudicial to the administration of justice). Further, we find violations of Rule 413, SCACR, specifically Rule (7)(a)(1) (violating the Rules of Professional Conduct) and Rule 7(a)(5) (engaged in conduct tending to pollute the administration of justice or to bring the courts or legal profession into disrepute and engaged in conduct demonstrating unfitness to practice law).