# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Georgia Anne Shobe, Respondent.

Appellate Case No. 2025-000617

---

Opinion No. 28300
Submitted August 27, 2025 – Filed September 17, 2025

---

## DEFINITE SUSPENSION

---

Disciplinary Counsel William M. Blitch, Jr. and
Assistant Disciplinary Counsel Phylicia Y. Coleman,
both of Columbia, for the Office of Disciplinary Counsel.

Georgia Anne Shobe, of Moncks Corner, pro se.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, Respondent admits misconduct and consents to the imposition of a confidential admonition, public reprimand, or definite suspension not to exceed six months.  We accept the Agreement and suspend Respondent from the practice of law in this state for six months.  The facts, as set forth in the Agreement, are as follows.

## I.

Respondent was admitted to practice in 1984.  This Agreement resolves seven disciplinary complaints filed with ODC between 2020 and 2022.

## Matter A.

In June 2019, Client A hired Respondent to prepare a separation agreement and

paid Respondent $3,000. After Client A's spouse would not agree to the prepared separation agreement, Respondent met with Client A and advised her that in order to proceed with a divorce, Client A and her spouse would have to cease living in the same home due to having no other applicable grounds for divorce.

In September 2019, Client A informed Respondent that she intended to move out-of-state and had the marital home appraised in early October 2019. Client A informed Respondent that she moved out of the home on October 18, 2019. Respondent advised Client A she would review the appraisal and then contact her but did not provide Client A with a timeframe.

On March 9, 2020, Client A emailed Respondent at two email addresses Respondent had provided and indicated that she wished to seek new counsel and requested a copy of her case file. On March 31, 2020, Client A emailed Respondent a second time, again requesting her case file and provided Respondent with her mailing address. Client A also asked Respondent for a current invoice for items billed against her retainer and requested a refund of the remaining balance. On April 14, 2020, Client A emailed Respondent a third time, again requesting her case file, an invoice, and a refund of the retainer's balance. Client A filed a claim with the Resolution of Fee Disputes Board of the South Carolina Bar (Board) in August 2020. Client A and Respondent reached an agreement to settle the fee dispute, and Respondent refunded Client A some of the fees.

Respondent represents that her office staff was sickened with the flu during the 2019 holiday season and that her legal assistant was out of the office for three weeks in February 2020, which made it difficult for Respondent to do the tasks that her support staff typically assisted with. Respondent represents that she has worked alone since March 16, 2020, due to COVID-19. Respondent verified that the email addresses Client A used to contact her in March and April 2020 were the correct email addresses for her at the time, but she does not recall having received the emails. Respondent admits to being without internet service in her office at that time, which made electronic communication difficult. Respondent further admits that her workload became unmanageable at one point. Respondent admits that as of November 2024, she had failed to provide Client A with a copy of her case file or an itemized invoice.

Respondent admits that her conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.15(d) (requiring that a lawyer promptly deliver to the client any funds or other property that the client is entitled to

receive); and Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense).

## Matter B.

In October 2019, Client B hired Respondent to prepare an agreement for Client B and his wife regarding the couple's two children and paid Respondent $3,500.

In mid-January 2020, Client B's spouse filed a Petition for Order of Protection. The matter was scheduled to be heard on January 31, 2020. However, Respondent and opposing counsel were able to reach an agreement on the matter and the presiding family court judge signed a temporary consent order in February 2020. Shortly thereafter, opposing counsel filed a summons and complaint and served it on Respondent. In response, Respondent met with Client B and filed an answer and counterclaim in March 2020.

Mediation was scheduled for December 15, 2020, after multiple attempts to reach an agreement had failed. Respondent requested the mediation be rescheduled when she began experiencing health issues. Between December 28, 2020, and January 19, 2021, Client B emailed Respondent three times to inquire as to when the mediation would be rescheduled, to provide Respondent new information, and finally to request a statement identifying the work that Respondent had done on the case. Respondent did not respond to any of these emails. On February 8, 2021, Client B filed a complaint with ODC, and on February 21, 2021, he filed a complaint with the Board. Client B also retained new counsel. The Board was unable to reach Respondent on several occasions despite leaving voicemails and sending both text messages and emails. The Board ultimately found in Client B's favor and ordered Respondent to refund some of the fees.

Respondent represents that she did what she could for Client B and filed several documents during the course of her representation. Respondent admits the Board was unable to reach her at one point, but she responded to them once her health issues subsided. Respondent admits she failed to provide Client B with an invoice and she had not recreated an invoice for Client B as of November 2024.

Respondent admits that her conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); and Rule 1.15(d) (requiring that a lawyer promptly deliver to the client any funds or other property that the client is entitled to

receive).

## Matter C.

In March of 2018, after previously representing herself at a temporary hearing that resulted in losing custody of her child, Client C retained Respondent and paid Respondent $5,000 to represent her in the ongoing custody matter. After a failed mediation in February 2019, Respondent began negotiating with opposing counsel in October 2019 because the temporary order in place was unclear as to a holiday visitation schedule. On January 30, 2020, a motion was filed to amend the temporary order. A hearing was initially scheduled for May 4, 2020. However, due to COVID-19 shuttering the courts, the hearing was rescheduled for May 17, 2021. Respondent was unable to attend the hearing because she was admitted to the hospital on May 13, 2021.

Client C hired new counsel, and on May 31, 2021, Client C's newly-hired counsel sent Respondent an order to substitute counsel. On June 23, 2021, Client C's new counsel followed up with Respondent via email regarding the order sent weeks prior. Respondent then signed and returned the order.

Client C's new counsel also requested Respondent mail a copy of Client C's file or provide an electronic copy on a flash drive. On June 25, 2021, Respondent declined to place Client C's file on a flash drive because of its size and informed Client C's new counsel that Client C should already have the entire file. On July 6, 2021, Client C's new counsel informed Respondent that Client C did not have the entire file and requested that Respondent inform Client C as to when she could stop by Respondent's office and retrieve the file. Client C's new counsel sent Respondent a follow-up email on July 19, 2021, informing Respondent that the case file was necessary to move forward in the matter and that they needed the file by July 23, 2021. After Respondent failed to meet the July 23, 2021 deadline, Client C's new counsel again emailed Respondent requesting the file by August 2, 2021, and stating that a request would be made with the court to order Respondent to turn over the file if she had not done so by that time. Client C filed her complaint with ODC on August 10, 2021. On August 26, 2021, Respondent gave Client C's mother the case file.

ODC mailed Respondent a Notice of Investigation on August 10, 2021, with a response being due within fifteen days. After receiving no response, ODC called Respondent and left a voicemail on September 3, 2021. After Respondent failed to return ODC's call, ODC emailed Respondent on September 8, 2021, regarding her

overdue response and requested a status update.  A week later, Respondent requested ODC fax the Notice of Investigation to her, and ODC did so on September 20, 2021.  ODC sent Respondent a letter on October 4, 2021, regarding her overdue response, with a response being required within ten days.  Having received no response, ODC mailed Respondent a certified letter pursuant to *In re Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).  ODC received Respondent's response to the notice on December 10, 2021, and Respondent's *Treacy* letter was returned to ODC on December 30, 2021, for having an insufficient address.

Respondent represents that she kept in constant communication with Client C throughout the COVID-19 pandemic and notified opposing counsel, the court, and the guardian ad litem of her May 2021 hospitalization and need to continue the hearing.  Respondent failed to explain why it took her two months to provide Client C or her new counsel with the case file.  Respondent represents that the insufficient address issue regarding the *Treacy* letter was the post office's fault.

Respondent admits that her conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); and Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority).

**Matter D.**

In August 2020, Client D hired Respondent to represent him in a domestic matter.  After several filings and approved mediation agreements, Client D alleges Respondent became more and more uncommunicative and eventually ceased communicating altogether.  Later, Client D texted Respondent stating it would be his last attempt to contact her; he also requested a refund of his retainer and an itemized receipt for services rendered thus far.  Respondent failed to return Client D's phone calls and text messages.  On December 20, 2021, Client D filed a complaint with ODC.

ODC mailed Respondent a Notice of Investigation on December 21, 2021, with a response being due within fifteen days.  On February 23, 2022, after receiving no response, ODC sent Respondent a *Treacy* letter via certified mail, which was returned as unclaimed on March 31, 2022.  Respondent appeared before ODC on April 29, 2022, at which time she testified that she still had not provided a response to the Notice of Investigation.  On May 17, 2022, ODC received Respondent's

response.  The next day, Client D again requested a final bill and partial refund of his retainer from Respondent.  On May 22, 2022, Client D's divorce was finalized with Respondent as his counsel.

Respondent admits that her conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR:  Rule 1.4 (requiring communication); Rule 1.15(d) (requiring that a lawyer promptly deliver to the client any funds or other property that the client is entitled to receive); and Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority).

## Matter E.

Client E was made the power of attorney for a family friend, B.A., in 2020.  On December 28, 2021, Client E hired Respondent to defend against a petition to become guardian and conservator of B.A. that was filed by the daughter of the previous power of attorney.  Client E paid Respondent $3,500.  Respondent treated the fees as earned when paid despite her fee agreement not containing the language required to charge an advance fee.  Client E filed a complaint on March 23, 2022, stating that she had not heard from Respondent since the first week of January 2022.

Before she began having health issues that caused her to be unable to work for two months, Respondent performed work on the case, including contacting the attorney who initially prepared the power of attorney documents for Client E in 2020, contacting opposing counsel that filed the 2021 petition, and working on the return to the petition.  In her May 27, 2022 response, Respondent initially represented to ODC that she instructed her staff to contact clients and reschedule appointments while she was out due to health concerns.  However, during a November 7, 2023 interview with ODC, Respondent represented that she had no staff since March 2020.  Respondent admits to not maintaining contact with Client E but states she used her cell phone to keep the court and opposing counsel informed.  Respondent represents Client E released her as counsel.

Respondent admits her conduct violated Rule 1.4 (requiring communication) and Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible), RPC, Rule 407, SCACR.

## Matter F.

On June 17, 2020, Client F hired Respondent and paid Respondent a $3,000 retainer. Respondent treated the fees as earned when paid despite her fee agreement not containing the language required to charge an advance fee. Because the courts were largely closed due to the COVID-19 pandemic at the time Respondent was retained, Respondent informed Client F that his matter would likely not qualify for an emergency hearing. In the meantime, Respondent requested that Client F obtain several documents for her to review. Respondent fell ill around the time the courts were reopening in October 2020. On March 14, 2022, Client F mailed Respondent a certified letter requesting a refund and relieving her as counsel; the letter was returned as undeliverable. In response, Client F mailed the letter again via regular mail, visited Respondent's office and taped the letter to her door, and attempted to fax the letter to both of Respondent's fax numbers. Having not heard from Respondent since 2020, Client F filed a complaint with ODC on June 10, 2022, and hired new counsel.

Respondent represents she was waiting for Client F to provide her with a signed retainer letter and school records related to the case. Respondent admits that she placed Client F's file with other files that were awaiting documents to be returned in order to begin the cases. Respondent admits she did not contact Client F regarding the school records or the retainer letter and that she has not refunded any of Client F's retainer. Respondent admits she can no longer locate Client F's file.

Respondent admits that her conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible); Rule 1.15(a) (requiring a lawyer to comply with the recordkeeping requirements of Rule 417, SCACR); and Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR.

## Matter G.

In November 2016, Client G retained Respondent and paid her $2,000 for assistance with responding to a letter she received from her ex-husband's counsel regarding child support and other issues related to a daughter the former couple

shared. Respondent prepared and sent a letter to opposing counsel in December 2016. After a meeting in December 2017, Respondent did not hear from Client G again until April 2018, at which time Client G contacted Respondent regarding her daughter's health issues. Respondent reminded Client G of the medical documentation necessary to pursue a change of circumstances with respect to custody and visitation. In June 2019, Client G's spouse provided Respondent with a limited medical record; however, Respondent informed Client G that these records would not be enough to file for a change of circumstances.

Respondent represents she had several phone calls with Client G after preparing the aforementioned letter and that she spoke with opposing counsel on several occasions. Respondent represents that Client G's file sat while she waited for the additional medical documentation and that no pleadings were filed because she did not have the necessary documents. Respondent represents that she did not hear from or follow up with Client G.

Respondent admits that her conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 1.3 (requiring diligence); and Rule 1.4 (requiring communication).

## II.

Respondent admits she violated Rule 7(a)(1) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR (providing a violation of the Rules of Professional Conduct is a ground for discipline).

With respect to prior discipline, Respondent previously received letters of caution in 2003[1] and 2009.[2]

In the Agreement, Respondent admits misconduct and agrees to the imposition of a

---

[1] The 2003 letter of caution cited the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); and Rule 3.2 (requiring reasonable efforts to expedite litigation).

[2] The 2009 letter of caution cited the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); and Rule 5.3 (requiring that a lawyer having supervisory authority over a nonlawyer shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the lawyer's professional obligations).

confidential admonition, public reprimand, or definite suspension not exceed six months. Respondent also agrees to pay the investigative and prosecutorial costs in this matter within thirty days of being disciplined and to complete the Legal Ethics and Practice Program Ethics School within one year of being disciplined. Additionally, within thirty days of being disciplined, Respondent agrees to enter into a restitution plan approved by the Commission on Lawyer Conduct (Commission) to pay restitution to Clients C, E, F, and G.

## III.

We are cognizant of Respondent's health concerns that, at times, impacted her communication with clients and affected her ability to practice law diligently and competently. Nevertheless, Respondent neglected seven clients, prejudicing several in doing so, and failed to respond to multiple ODC investigations. Further, even after several years, Respondent has yet to pay restitution that she admits she owes certain clients, and has provided no explanation as to why she has not done so. Accordingly, we accept the Agreement and suspend Respondent from the practice of law for a period of six months. *See In re Moore*, 329 S.C. 294, 306, 494 S.E.2d 804, 811 (1997) ("The appropriate sanction for neglect of several client matters generally is a public reprimand provided the clients are not greatly prejudiced. However, when the client is prejudiced and the attorney refused to cooperate with [ODC's] investigation, the sanction imposed has been as great as a one year suspension." (citations omitted)).

Within thirty days, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission. Within one year, Respondent shall complete the Legal Ethics and Practice Program Ethics School and shall provide proof of completion no later than ten days after the conclusion of the program. Additionally, within thirty days Respondent shall enter into a restitution agreement approved by the Commission to pay restitution as follows: $2,500 to Client C; $3,500 to Client E; $3,000 to Client F; and $1,000 to Client G. Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**