642 S.E.2d 575

**In the Matter of Former Clarendon County Magistrate Willie L. BETHUNE, Respondent.**

No. 26264.

Supreme Court of South Carolina.

Submitted Jan. 30, 2007.

Decided Feb. 20, 2007.

250

Henry B. Richardson, Jr., Disciplinary Counsel, and Assistant Deputy Attorney General Robert E. Bogan, both of Columbia, for Office of Disciplinary Counsel.

John C. Land, III, of Manning, for respondent.

PER CURIAM.

 In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RJDE, Rule 502, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of any sanction set forth in Rule 7(b), RJDE, Rule 502, SCACR. After entering into the agreement, respondent resigned his magisterial position. We accept the agreement and impose a public reprimand, the most severe sanction we are able to impose under the circumstances. *See In the Matter of Gravely*, 321 S.C. 235, 467 S.E.2d 924 (1996) (a public reprimand is the most severe sanction the Court can impose when a judge no longer holds judicial office).[1] The facts as set forth in the agreement are as follows.

## FACTS

Since 1985, respondent was a part-time Clarendon County Magistrate. On October 1, 2006, a female motorist was incarcerated by the Summerton Police Department for traffic and driver's license offenses. Respondent presided over her bond hearing that evening.

The motorist alleges that, during the bond hearing, respondent asked whether her bra straps were clear or whether the whole bra was clear. She alleges he further commented that they weren't used to having "fine women" there that often, remarked that her eyes were pretty, and made a remark suggesting that she should show the police officer her navel. The motorist's allegations are supported by a police officer who was in court.

Initially, respondent reported to ODC that he had no recollection of making the comments. Upon further reflection, however, respondent recalled that the motorist was not wearing an orange jumpsuit like the other prisoners but, instead, a cut-off tank top, which was causing some degree of distraction and/or disruption, so he instructed her to be seated. Respon-

---

1. Respondent's request for oral argument is denied.

dent reports that any comments he may have made to the motorist were made in that context only.

Respondent reported that, at some point, the motorist asked the police where her car had been towed. Police attempted to telephone the towing company owner for the motorist, but were unable to make contact. The motorist then asked respondent if he could help her to regain possession of her car. Respondent informed ODC that he then made telephone contact with the towing company owner and, at the motorist's request, arranged to drive to pick up her car.

The motorist alleges respondent made sexual advances toward her while they were in the car together and offered to have the charges against her dismissed in exchange for sexual favors. Respondent denies these allegations.

Respondent reports that, while he and the motorist were together in his car, the motorist engaged him in conversation about procedural matters relating to her pending charges and invited him to touch her in a sexual way. Respondent reports he declined the invitation, but did talk with the motorist about court procedure and, in the course of the conversation, revealed to her that another Clarendon County Magistrate, whom respondent named, would preside over her trial. According to respondent, the motorist asked what the other magistrate looked like, whether he was married, and then said she would have sex with this magistrate if he would drop the charges. The motorist gave respondent her telephone number and asked him to relay it and her offer to the other magistrate. Respondent told the motorist he would call the other magistrate. Respondent also gave the motorist his business card from another line of work with his cell phone number hand-written on the back.

It is not disputed that respondent telephoned the other magistrate concerning the motorist. Respondent informed ODC that he told the other magistrate "a young lady wants to speak to you" and then gave the magistrate the motorist's telephone number.

The other magistrate's recollection is that respondent telephoned after 10:00 p.m. After initial pleasantries and general conversation, respondent stated he was calling to see if the magistrate would "help somebody" who had traffic tickets

pending in Summerton where the magistrate had just become interim municipal judge in addition to his duties as magistrate. The magistrate indicated it was his impression that the motorist respondent wanted to help had some relationship with respondent such as a friend, relative, or possible fellow church member. The magistrate recalled being given the motorist's name and telephone number and being asked to telephone the motorist.

It is not disputed respondent called the motorist at 10:03 p.m. on October 4, 2006, to let her know he had spoken with the other magistrate about the tickets. Respondent left a voice message identifying himself and stating "I spoke with [the other magistrate]. He's gonna give you a call. Everything is on . . . ." When the other magistrate called the motorist, she advised him that she had made a complaint against respondent and they should have no further contact.

## *LAW*

By his misconduct, respondent admits he has violated the following Canons of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1 (judge shall uphold integrity of the judiciary); Canon 1A (judge should maintain high standards of conduct and should personally observe those standards); Canon 2 (judge shall avoid impropriety and the appearance of impropriety in all activities); Canon 2A (judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Canon 2B (judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment); Canon 3 (judge shall perform the duties of judicial office impartially and diligently); Canon 3(B)(4) (judge shall be dignified and courteous to litigants); Canon 4 (judge shall conduct extra-judicial activities to minimize risk of conflict with judicial obligations); and Canon 4(A) (judge shall conduct extra-judicial activities so they do not cast reasonable doubt on judge's capacity to act impartially as judge). Respondent further admits his misconduct constitutes grounds for discipline pursuant to Rule 7(a)(1) (it shall be ground for discipline for judge to violate the Code of Judicial Conduct) and Rule 7(a)(9) (it shall be ground for discipline for

judge to violate the judge's Oath of Office), of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR.

## *CONCLUSION*

■ We accept the Agreement for Discipline by Consent and issue a public reprimand.[2] Accordingly, respondent is hereby reprimanded for his misconduct. Further, we hereby prohibit and enjoin respondent from holding any judicial office within the unified judicial system in South Carolina.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.

---

2. As previously noted, a public reprimand is the most severe sanction the Court can impose when a judge no longer holds judicial office. *See In re Gravely, supra.*