661 S.E.2d 343

**In the Matter of Larry M. HUTCHINS, Former Spartanburg County Magistrate, Respondent.**

No. 26485.

Supreme Court of South Carolina.

Heard March 4, 2008.
Decided May 12, 2008.

Lesley M. Coggiola, Disciplinary Counsel, Deborah S. McKeown, Assistant Disciplinary Counsel and Robert E. Bogan, Assistant Attorney General, all of Columbia for Office of Disciplinary Counsel.

C. Rauch Wise, of Greenwood, for Respondent.

PER CURIAM.

This judicial discipline case involves several complaints of misconduct which allegedly occurred while respondent served as a magistrate judge. He is currently retired. After a full investigation by the Office of Disciplinary Counsel (ODC) and a hearing before the Commission on Judicial Conduct Panel (Panel), the Panel recommended the following sanctions: (1) public reprimand; (2) respondent be prohibited from seeking or accepting any judicial position in South Carolina without the express permission of the Supreme Court; and (3) respondent be ordered to pay costs of proceedings. Both respondent and ODC object to various findings of the Panel. We agree with the Panel and adopt their findings and sanctions.

## FACTS

Respondent became a part-time magistrate in Spartanburg County in 1987 and a full-time magistrate in 1995. In January 2003, respondent was reassigned by the Spartanburg County chief magistrate from respondent's office at the courthouse to the magistrate's office at the county jail. At the office at the jail, the magistrates shared the same desk, and all court employees shared the same restroom. Respondent was unhappy with the transfer.

During the 2003 legislative session, the four-year appointments of the Spartanburg magistrate judges were pending,

and there was a disagreement over several reappointments which resulted in a deadlock. As a result, the magistrates were on "holdover" status as of May 1, 2003. The two complaints leading to this disciplinary action occurred around this time.

## Matter A

Complainant A worked for respondent as a clerk in respondent's office at the courthouse. When respondent was transferred to the jail at the beginning of 2003, Complainant A stayed at the courthouse office but remained in regular contact with respondent.

Complainant A testified that on May 1, 2003, respondent telephoned her at the courthouse office and asked her to stop by his office at the jail when her shift ended. When Complainant A arrived, respondent asked her how difficult it would be for her to get another Spartanburg County magistrate judge over to her apartment. Complainant A replied flippantly, believing that respondent was joking in a manner consistent with their prior office demeanor. However, according to Complainant A, respondent then asked her to "go all the way" with the other judge, to videotape it, and respondent mentioned the availability of small cameras. Complainant A stated that when she understood respondent to be serious, she became upset and left and subsequently reported the matter to the chief magistrate.

Complainant A's allegation was initially investigated by local law enforcement and SLED. Respondent was asked to take a polygraph examination in connection with that investigation but agreed to do so only if Complainant A, the judge to which respondent referred, and the chief magistrate judge would submit to examination as well. SLED did not conduct polygraph tests on any person, and it concluded its investigation without any criminal prosecution against respondent.[1]

## Matter B

Complainant B was the clerk supervisor in the magistrate's office at the county jail. On May 9, 2003, respondent called

---

1. In a letter dated August 28, 2003 from the Attorney General's office to the SLED investigator, the Attorney General's office informed SLED that there was insufficient evidence to secure a conviction.

Complainant B to complain about the work performance of certain magistrate court clerks. During the conversation, respondent commented that one of the clerks was dating "niggers" and that there was "no telling what we might catch using the same bathroom as her." Complainant B reported the conversation to her supervising magistrate and then to the chief magistrate. Complainant B was also instructed by her supervising magistrate to inform the clerk to whom respondent allegedly referred, as well as another African–American clerk. One of the clerks wrote a letter to the NAACP, which resulted in much adverse publicity for respondent and the Spartanburg County magistrate's office.

Both Matter A and Matter B were reported to the Commission on Judicial Conduct (Commission) and were considered by an investigative panel of the Commission. However, those matters were dismissed by the investigative panel, but respondent was not informed of the reasons for dismissal.

*Other relevant facts*

In December 2003, respondent e-mailed the chief magistrate requesting a meeting with all the Spartanburg County magistrate judges to discuss "the clerks that made up stories about me since all have been cleared by judicial standards and the SLED investigation." That meeting took place on January 5, 2004.

During that meeting, several magistrates,[2] including respondent, voiced their concerns and advocated the firing of Complainant A, Complainant B, and the clerk who notified the NAACP. The Panel took testimony from each of the magistrates present at the meeting, and most of them recalled respondent making comments in reference to respondent's having been "cleared by judicial standards and the SLED investigation." The majority of the magistrates also testified that respondent represented in some fashion that he had been willing to submit to a polygraph examination but no one else involved would take one. Respondent denied making these representations but did acknowledge that he presented a copy of the letter reflecting the Attorney General's decision not to pursue prosecution of any charges against respondent. After

---

2. Respondent met with two other magistrate judges the Friday before this meeting, and they discussed the upcoming meeting.

some discussion, the magistrates voted unanimously to fire Complainant A and the clerk who notified the NAACP; they also voted 6–5 to terminate Complainant B's employment. These votes were recorded on "ballots" prepared before the meeting by one of the judges who met with Respondent the week before the meeting.

After the meeting on January 5, 2004, several magistrates talked amongst themselves and reported having misgivings about the actions taken. It was discussed that respondent may not have accurately described the circumstances surrounding the polygraph test. Furthermore, on January 6, 2004, a state senator sent a letter to the chief magistrate judge indicating his understanding that the reasons given for the magistrates' actions were not justified, and he encouraged the court to take immediate action to reinstate the three employees. The magistrates met again on January 8, 2004, and voted to reinstate all of the employees.

Shortly after the January 8, 2004 meeting, the matter was reported to the Commission on Judicial Conduct for investigation. The Commission reopened its files on Matter A and Matter B, and it also investigated whether respondent had misrepresented the facts surrounding his being "cleared" or "exonerated" by SLED and the Commission, as well as respondent's potential misrepresentation of the polygraph testing.

After receiving notice of the investigation, respondent took and passed a polygraph test administered by a private examiner and submitted the results to ODC as evidence that respondent's denials of misconduct were truthful. The test results were later analyzed by SLED and determined to be inaccurate.[3] Respondent, after being notified of SLED's conclusions, declined to take another polygraph test that would have been administered by SLED. However, throughout the investigation, he has constantly denied the allegations in both matters and has maintained that he did not make any statements at the January 5, 2004 meeting pertaining to being cleared by judicial standards in regards to Matter A and

---

3. The private examiner acknowledged at the hearing before the Panel that he changed his mind after meeting with SLED officials and agreed that respondent did not pass the polygraph examination.

Matter B, the SLED investigation, or a polygraph examination.

On August 10, 2004, ODC petitioned to have respondent placed on interim suspension pending the investigation. In response, respondent informed this Court that he desired to retire on December 31, 2004, in lieu of interim suspension, so that he could have time to file for retirement and Social Security. By order dated August 20, 2004, the Court accepted respondent's offer to retire no later than December 31, 2004, but placed respondent on interim suspension until he retired.[4]

On May 2, 2005, respondent wrote a letter to Governor Mark Sanford, complaining about the allegations against respondent. Respondent stated in his letter that he had passed a polygraph examination.

## LAW/ANALYSIS

ODC filed formal charges in this matter on June 23, 2006, and a hearing was held before the Panel on March 26, 2007. The Panel characterized the charges as centered on five basic allegations:

(1) Allegations by Complainant A that respondent proposed and encouraged her to videotape herself engaged in sexual relations with another magistrate for the purpose of obtaining incriminating evidence to use against the magistrate

(2) Allegations by Complainant B that respondent used the term "niggers" in a conversation with her referring to men that a court clerk was possibly dating

(3) Allegations that respondent orchestrated the firing of three magistrate court clerks (Complainant A, Complainant B, and the clerk who notified the NAACP) in retaliation for their reporting alleged misconduct by respondent

(4) Allegations that respondent falsely related to the other Spartanburg County magistrate judges that he had been

---

4. Since this order in August 2004, respondent has corresponded with the Court numerous times requesting his retirement and/or suspension be lifted. Respondent is currently retired from the Spartanburg County Magistrate's office.

cleared of all wrongdoing and had offered and was willing to take a polygraph test in connection with Matter A and Matter B, but that he was not required to take a polygraph test because one or more of his accusers were unwilling to be tested, and

(5) Allegations that respondent falsely represented in a letter to Governor Sanford that he had passed a polygraph examination.

The Panel found that the first two allegations were proven by clear convincing evidence. As to the firing and misrepresentation charges, the Panel found that it had been proven by clear and convincing evidence that respondent had asserted at the January 5, 2004 meeting that he had been cleared by SLED and "judicial standards." However, the Panel held that this assertion alone did not establish misconduct because respondent's statement was reasonable given the action taken by the Commission, SLED, and the attorney general. The Panel also recognized that there was some discussion at the meeting regarding respondent's willingness and/or refusal to take a polygraph examination at the request of SLED investigators, but it was not proven by clear and convincing evidence that respondent made the representations at the meeting with the intention of influencing the magistrates' decisions to terminate the clerks' employment. Finally, the Panel did not find any misconduct from the Sanford complaint because respondent no longer held a judicial office, having resigned December 31, 2004, and because respondent had in fact passed a polygraph test by a private examiner, despite the disputed result.

The Panel concluded that respondent's misconduct under Rule 7(a) of the Rules of Judicial Disciplinary Enforcement violated:

(1) Canon 1 by failing to uphold the integrity of the judiciary;

(2) Canon 1(A) by failing to participate in establishing, maintaining, and enforcing high standards of conduct, and personally observing those standards;

(3) Canon 2 by failing to avoid impropriety and the appearance of impropriety;

(4) Canon 2(A) by failing to act at all times in a manner that promotes public confidence in the judiciary;

(5) Canon 2(B) by allowing his relationships with others to influence the judge's judicial conduct or judgment;

(6) Canon 3 by failing to perform the duties of the judicial office impartially;

(7) Canon 3(B)(4) by failing to be dignified and courteous to those with whom the judge deals in an official capacity and requiring similar conduct of persons subject to the judge's discretion and control;

(8) Canon 3(B)(5) by failing to perform his judicial duties without bias or prejudice and by failing to cooperate with other judges and court officials in the administration of court business; and

(9) Canon 3(C)(2) by failing to require staff, court officials, and others subject to the judge's discretion and control to observe the standards of fidelity that apply to the judge.

## Respondent's Objections

Respondent argues that the findings of misconduct by the Panel are not supported by clear and convincing evidence. We disagree.

 The Panel found that respondent's testimony in response to most of the material allegations against him was not credible or believable. The findings of the Panel are entitled to great weight, particularly when the inferences drawn from the testimony in the record depend largely on the credibility of the witnesses. *In re Yarborough*, 327 S.C. 161, 165, 488 S.E.2d 871, 873 (1997). In addition, both complainants testified as to their recollections surrounding the allegations, and their testimony was supported by their supervisors who described their demeanor and corroborated their assertions. After reviewing the record, we believe the findings of misconduct against respondent were established by clear and convincing evidence.

*ODC's Objections*

ODC raises four exceptions to the Panel's recommendation. First, ODC argues the Panel erred in failing to include a finding that respondent also violated Canon 3(C)(1) [5] or Canon 4(A)(2) [6] due to respondent's use of the racial slur.

Respondent used the derogatory term while on a phone call with Complainant B, and the purpose of the call was to complain about the job performance of two other employees. Respondent's conduct clearly evinced a bigoted animus in the performance of his judicial duties, and the Panel appropriately determined that respondent's misconduct fell under Canon 3(B)(5). We believe it is unnecessary to find separate violations of Canon 3(C)(1) and Canon 4(A)(2).

ODC next argues that the Panel erred in finding respondent did not commit misconduct by asserting in the January 5, 2004 meeting that he had been cleared or exonerated.

The Panel determined that it had been proved that respondent asserted in some form that he had been cleared or exonerated by SLED and the Commission but that respondent's position was reasonable. ODC claims it was not reasonable because it argues there is a difference in being "cleared" or "exonerated" and having prosecution declined due to lack of evidence. ODC contends that by using the words "cleared" or "exonerated", respondent intentionally implied that there had been a factual finding that respondent had not committed the misconduct alleged by Complainant A and Complainant B.

While it is true that no correspondence from SLED, the attorney general's office, or the Commission use the terms "cleared" or "exonerated", it is undisputed that respondent was not facing any prosecution or investigation from SLED or the Commission at the time of the meeting on January 5, 2004.

---

5. "A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business."

6. "A judge shall conduct all of the judge's extra-judicial activities so that they do not demean the judicial office."

Respondent's assertion that he had been cleared of misconduct was based on his reasonable belief in light of the earlier proceedings. Accordingly, we decline to find respondent committed misconduct due to this statement made during the January 5, 2004 meeting.

ODC also argues that the Panel erred by finding that respondent misrepresented his willingness to take a polygraph examination.

At the hearing before the Panel, all eleven judges, including respondent, who were present at the January 5th meeting testified. Four of the judges (including respondent) testified that they could not recall any specific representation or mention of the polygraph issue by respondent. The other seven judges testified, in general, that respondent stated he was willing to take a polygraph test but that respondent did not have to take one because his accusers would not take a polygraph test.

We find the Panel was correct in noting there was conflicting testimony concerning the details and context of any discussion surrounding the polygraph examination. As such, ODC did not clearly and convincingly prove its allegation that respondent commented directly on the subject of the polygraph test during the meeting, and that such information influenced the magistrates' decision as respondent intended.

Finally, ODC contends the Panel erred in finding respondent did not commit misconduct because of his representation to Governor Sanford that he had passed a polygraph test. We disagree.

The Panel correctly held respondent's statement that he had passed the polygraph test was reasonably accurate. The private examiner who administered the polygraph test initially determined that respondent passed, and although this conclusion was later challenged, respondent had been told that he had passed the examination. We find no misconduct for respondent's letter to Governor Sanford.

## CONCLUSION

A public reprimand is the most severe sanction that can be imposed against respondent, *In re Bethune*, 372 S.C.

249, 642 S.E.2d 575 (2007), and we adopt the Panel's conclusions in its entirety. Respondent is to receive the following sanctions: (1) public reprimand; (2) respondent is prohibited from seeking or accepting any judicial position in South Carolina without the express permission of the Supreme Court; and (3) respondent is ordered to pay costs of proceedings.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.